STATE of North Dakota By JOB SERVICE NORTH DAKOTA, Petitioner and Appellee,

v.

Ardis DIONNE, d/b/a Thorne Hill Motor Inn, Respondent and Appellant.

Civ. No. 10332.

Supreme Court of North Dakota.

May 26, 1983.

Ardis Dionne, pro se (submitted on brief).

VANDE WALLE, Justice.

Ardis Dionne appealed from an order for punishment and warrant of commitment issued by the district court of Rolette County. We affirm.

■ A field representative of Job Service North Dakota (hereinafter "Job Service") requested Dionne, owner of Thorne Hill Motor Inn, to permit him to review the records of the business to determine whether or not the motel was liable for unemployment compensation contributions under the North Dakota Unemployment Compensation Law. See Chapters 52–01 through 52–07.1, N.D.C.C. The field representative was denied access to the records and a subpoena was issued, as authorized by Section 52–06–23, N.D.C.C.,[1] requiring Dionne to appear before the acting chief appeals referee for Job Service on August 10, 1982, and "to produce payroll records and such records of expenditures for wages (check register, W–2 forms, quarterly social security reports, general ledger) for the period December 1, 1981, through June 30, 1982, as set forth in Section 52–01–02 of the North Dakota Century Code, to determine whether you are liable under the Job Insurance Act." The subpoena informed Dionne that failure to comply would constitute grounds for application to the district court for an order compelling her attendance and production of records and that further failure would make her liable for contempt of court. Dionne appeared as required by the subpoena but did not bring any records with her. Subsequently, Job Service sought a court order, pursuant to Section 52–06–25, N.D.C.C.,[2] requiring Dionne to appear be-

William G. Peterson, Asst. Atty. Gen., Bismarck (submitted on brief), for petitioner and appellee Job Service North Dakota.

1. Section 52–06–23, N.D.C.C., provides, in part:
"In the discharge of the duties imposed by the North Dakota Unemployment Compensation Law, the chairman of an appeal tribunal, or any duly authorized representative or member of the bureau, may . . . issue a subpoena to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and other records deemed necessary as evidence in connection with the administration of the North Dakota Unemployment Compensation Law."
Dionne contends the subpoena issued by Job Service is illegal and unconstitutional because it was not issued by a court of law. We find no merit in this contention.

2. Section 52–06–25, N.D.C.C., provides:
"In case of contumacy by, or refusal to obey a subpoena issued to, any person, any court of this state within the jurisdiction of

fore a Job Service representative on September 9, 1982, with the records. The order was issued and Dionne again appeared without the records. Another court order was sought by Job Service requiring Dionne to appear on October 5, 1982, with the records. The order was issued and, again, Dionne appeared without the records. Subsequently, Job Service applied to the district court for an order to show cause directing Dionne to appear before the district court to show cause why she should not be cited and punished for contempt of court for failure to comply with the terms of the last order requiring her to appear before Job Service with the specified records.

The order to show cause before the district court was served on Dionne and the district court issued an "Order for Punishment and Warrant of Commitment" in which the court found that Dionne is an employing unit as defined by Section 52–01–01(16), N.D.C.C.; that as such Dionne is required to keep records and make those records available for inspection; that Dionne has paid persons in cash for services performed and has made a record of such payments; that Dionne refused to make such records available for inspection upon request and in response to subpoena and court order; that such refusal by Dionne has been willful, deliberate, and without excuse; and that Dionne's actions constitute clear and convincing evidence of a willful, deliberate, and inexcusable failure to comply with the lawful order of the trial court. The trial court determined that Dionne had committed a civil contempt as defined in Section 27–10–03(3), N.D.C.C., and ordered her confined in a county jail or other lawful place of confinement until she complied with the court's order, or for a period of sixty days, whichever first occurred, and further ordered that Dionne pay costs in the amount of $20 per day to Rolette County for each day of confinement plus $200 as the costs of the proceeding. The district court also issued a warrant of commitment directed to the sheriff of Rolette County requiring him to take Dionne into custody and to confine her in the county jail or other lawful place of confinement pursuant to the court's order for punishment. From the order of punishment and commitment Dionne took this appeal.

Dionne represented herself in the proceedings below as well as in the brief filed with this court. She filed an "Answer to Order to Show Cause and Demand for Dismissal" with her personal affidavit in response to order to show cause. Additionally, she introduced as an exhibit in the trial court an affidavit she filed with Job Service. Stripped of the rhetoric, these documents reflect that Dionne operates a motel in Rolette; that although other people perform services for the motel it is Dionne's position that they are "independent contractors" and that she has no employees; that she has not paid out any wages or salaries; that she does not have nor keep any payroll records; that she does not collect any social security for any employees; that she is not required to pay for or collect any unemployment compensation or workmen's compensation premiums; and that

which the inquiry is carried on or within the jurisdiction of which the person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the chairman of an appeal tribunal or the bureau or its duly authorized representative, shall have jurisdiction to issue to such person an order requiring such person to appear before an appeal tribunal or the bureau, or its duly authorized representative, there to produce evidence, if so ordered, or there to give testimony touching the matter under investigation or in question. Any failure to obey such order of the court may be punished by the court as a contempt thereof."

Dionne contends the orders issued by the district court are illegal and unconstitutional because there was no summons or complaint filed and no action brought against her. We find no merit in this contention. Section 52–06–25 clearly provides the district court the authority to issue orders requiring an individual to appear before Job Service and to punish as a contempt any failure to obey the orders. Section 27–10–03(8), N.D.C.C., provides the district court with authority to use contempt proceedings in "any other case expressly authorized by the code or statutes of this state, . . ." Section 52–06–25, N.D.C.C., is obviously such express authority.

she therefore is not subject to unemployment compensation laws nor liable for unemployment contributions.

 Dionne contends, in this court, as she did throughout the proceedings below, that the only issue is whether or not she is an employer, i.e., whether or not she has employees working for her, and whether or not she is an employing unit as defined by the unemployment compensation statutes. We do not agree that the issues are that broad. Many of the statements in Dionne's return to the order to show cause and her affidavits are self-serving statements which amount to conclusions of law. Whether or not Dionne is an employer within the meaning of the unemployment compensation statutes is a legal question to be determined after all the facts have been determined.

Section 52–01–02, N.D.C.C., requires certain records to be kept by an employing unit. It provides, in part:

"Each employing unit shall keep true and accurate work records containing such information as the bureau may prescribe. Such records shall be open to inspection and may be copied by the bureau or its authorized representatives at any reasonable time as often as may be necessary. The bureau or the chairman of any appeal tribunal may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which the bureau, or he, deems necessary for the effective administration of the North Dakota Unemployment Compensation Law."

If Dionne is an "employing unit" she is subject to the provisions of Section 52–01–02, N.D.C.C. Thus we believe the only issue is whether or not Dionne is an "employing unit" within the meaning of the unemployment compensation statutes. "Employing unit" is defined by Section 52–01–01(16), N.D.C.C., to mean "any individual or type of organization ... which has or subsequent to January 1, 1936, had one or more individuals performing services for it within this state and:

"a. . . .

"b. Whenever any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or subcontractor is an employer by reason of subsection 15, the employing unit, for all purposes of the North Dakota Unemployment Compensation Law, shall be deemed to employ each individual in the service of each such contractor for each day during which such individual is engaged solely in performing such work, except that each such contractor or subcontractor who is an employer by reason of subsection 15 shall be liable alone for the employer's contributions measured by wages to individuals in his service; ..."[3]

 The primary objective of statutory construction is to ascertain the intent of the Legislature. Every word used in a statute is to be given its plain, ordinary, and commonly understood meaning within the context in which it is used. *Rothe v. S–N–G Stores, Inc.*, 308 N.W.2d 872 (N.D.1981). It is apparent from a review of the statutory definition of an "employing unit" that an employer-employee relationship, as opposed to an independent-contractor relationship, is not determinative of whether or not a business is an "employing unit." Rather, the definition requires that we look at whether or not the business has "one or more individuals performing services for it ..." Dionne admitted at the hearing on the order to show cause that she had individuals

---

**3.** The North Dakota Unemployment Compensation Law was enacted in 1937. See 1937 N.D. Sess.Laws Chapter 232. As originally enacted the definition of "employing unit" meant "any individual or type of organization ... which has or subsequent to January 1, 1936, had *in its employ* eight or more individuals performing services for it within this State." The definition was amended in 1941 to delete the words "in its employ." The amendment also removed the requirement of "eight" individuals and included the current requirement of "one or more individuals." 1941 N.D.Sess.Laws, Chapter 261, Sec. 2.

performing services for her business. Dionne maintains they did so on an independent-contractor basis rather than on an employer-employee basis; however, even assuming the relationship is one of independent contractor, Dionne is not excepted from the provisions of Section 52–01–02, N.D.C.C. She may not be subject to paying employer contributions to Job Service but that is an issue to be determined after an examination to ascertain the status of Dionne and the independent contractor. Dionne's position would prevent Job Service from making that determination and would require Job Service to accept Dionne's self-serving declarations. We cannot so interpret the law.

Nor is Dionne excused from compliance with the Job Service subpoenas and the orders of the district court. She conceded in response to questions by the trial judge that she paid persons in cash for services performed and that she has some records of such payments. She refused to make these records available to the trial court or to Job Service. Furthermore, when requested by the trial court to provide the names of the "independent contractors" or the "contractor names" or "contractor's names" to whom she made payment, she refused to divulge the information indicating, "That's between me and them."

In *United States v. Rylander,* —— U.S. ——, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), the United States Supreme Court considered an appeal involving a proceeding in which Rylander was held in civil contempt by a United States District Court for failure to comply with its earlier order enforcing an Internal Revenue Service summons for certain books and records. The Supreme Court held that Rylander, in a contempt proceeding, could not attack the enforcement order on the ground that he had no possession or control of the records at the time the District Court's enforcement order was issued, but the Court indicated that he could defend the contempt charge on the ground that he was, at the time of the contempt hearing, unable to comply because he lacked possession or control of the records. The Court held that Rylander had the burden of proving he did not possess or control the records. Here, Dionne conceded she had records of the amount paid to the "independent contractors" but refused to produce those records.

The decision in *Rylander* is significant from another standpoint. Rylander contended he could not be required to testify because it would violate his privilege against self-incrimination under the Fifth Amendment to the United States Constitution.[4] The Court held that the privilege may be a valid ground upon which Rylander may decline to answer questions but it is not a substitute for evidence that would assist in meeting Rylander's burden that he did not possess or control the required records. Here, as in Rylander, Dionne had the burden of proving that she did not possess or control records relating to her business activities. She failed to meet that burden.

In summary, it is Dionne's position that only if she is required to pay Job Service contributions for unemployment compensation is she required to produce her records. Her argument suggests that if she is an "employing unit" and required to produce her records she is automatically responsible for employer contributions to Job Service. But, in addition to the provision in Section 52–01–01(16), N.D.C.C., defining an "employing unit," which refers to independent contractors, subsection 14 of Section 52–01–

4. Section 52–06–26, N.D.C.C., provides that no person shall be excused from testifying or producing records before Job Service "on the ground that the testimony or evidence, documentary or otherwise, required of him, may tend to incriminate him or subject him to a penalty or forfeiture." However, the statute further provides:

"No individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying."

01, in defining an "employee" for purposes of the Unemployment Compensation Law, excludes from the term "employee":

"a. Any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor; or

"b. Any individual. (except an officer of a corporation) who is not an employee under such common-law rules."

Thus, if the people who perform services for Dionne are independent contractors, Dionne will not be responsible for contributions to Job Service for unemployment compensation and she has nothing to fear. However, because other people perform services for Dionne she is an "employing unit" within the meaning of the North Dakota Unemployment Compensation Law and her records, whatever they might be, are subject to inspection by Job Service. Job Service is not required to accept Dionne's self-serving statements that the persons performing services are independent contractors rather than employees. If Job Service were not permitted to inspect the books and records, any employer might simply allege his employees were independent contractors and refuse permission to Job Service to inspect the records, and yet it would be Job Service's burden to prove that the persons performing services were employees rather than independent contractors. A construction of the statutes which produces such a result is not only simplistic, it is contrary to the wording of the statutes

which permit Job Service to examine the records of an "employing unit" and define an "employing unit" as any organization which has one or more individuals "performing services" for it. Whether the persons "performing services" are independent contractors or employees is, for the purpose of examination of records, immaterial. Only after the records have been examined does the difference become material.

Here, Dionne was ordered to produce the records she had in her possession or under her control. The evidence sustains the trial court's finding that Dionne is an "employing unit" as defined by the statutes. As a result, Dionne is obligated by law to produce those records.[5] Her refusal to obey the subpoena issued by Job Service and the orders of the district court is a civil contempt.

The Order for Punishment and Warrant of Commitment is affirmed.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.

5. Neither Dionne nor Job Service has relied upon or cited to us the order of the United States District Court for the District of North Dakota in *Lone Steer, Inc. v. Donovan*, A1–82–10, issued on October 27, 1982, holding that warrantless searches of business premises under Section 11 of the Fair Labor Standards Act [29 U.S.C. § 211] violate the Fourth Amendment to the United States Constitution; nor has either of the parties relied upon or cited to us *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), upon which the order in *Lone Steer* is predicated. In *Marshall* the United States Supreme Court held that warrantless searches of business premises under provisions of Section 8(a) of the Occupational Safety and Health Act of 1970 [29 U.S.C. § 657(a)] are unconstitutional. The application of these decisions to an order requiring the production of records has not been judicially determined. We further note that the order of the district court requiring Dionne to produce the records was issued after application by Job Service and supported by an affidavit of the acting chairman of the appeal tribunal of Job Service which, taken together, arguably may constitute a "warrant or its equivalent" within the decision in *Marshall*. Finally, we note that the issue of a *warrantless* search was not raised in the trial court nor in this court and we therefore do not decide it. *Hirschkorn v. Severson*, 319 N.W.2d 475 (N.D. 1982).