**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Scot HAUGEN, Defendant and Appellant.**

**Cr. No. 1031.**

Supreme Court of North Dakota.

April 1, 1985.

Richard L. Schnell, State's Atty., and Rodney K. Feldner [argued], Asst. State's Atty., Mandan, for plaintiff and appellee.

Ralph A. Vinje, Bismarck, for defendant and appellant.

GIERKE, Justice.

Defendant, Scot Haugen, was charged with the offense of dealing in stolen property in violation of § 12.1–23–08.3(1)(a) of the North Dakota Century Code. Trial was had to a jury in the District Court of Morton County. Scot appeals from the final judgment of conviction entered against him on May 29, 1984. We reverse.

On approximately November 9, 1983, Lynn White of the Morton County Sheriff's Department received information from Steve Haugen, a cousin of Scot's, that Scot Haugen and Doug Fredericks allegedly had a stolen portable generator in their possession. The Department had been investigating the theft of a generator which was taken from a farm south of Mandan. White contacted the Attorney General's office and requested the assistance of undercover personnel. Dale Maixner and Gerald Kemmet of the Drug Enforcement Unit assisted White in his investigation of the

allegedly stolen generator. A meeting was arranged, at which time Maixner met with Scot and Fredericks at Hardee's parking lot in Mandan at 11:30 a.m. on November 9, 1983. White observed the meeting from a nearby van parked in the parking lot. Kemmet video-taped and recorded the meeting from that same van.

Maixner discovered that the generator in the back seat of Scot's vehicle was not the generator that White was looking for. Therefore, Maixner told Fredericks that, before he bought the generator, he needed some time to check the price of comparable generators. Actually, Maixner wanted to verify whether or not it was in fact stolen property. Maixner subsequently learned that the generator had been stolen from the Knoefler Honey Farm.

Maixner met with Scot later the same day, November 9, at approximately 4:10 p.m. at Hardee's parking lot in Mandan. At that time a price of $340 was agreed upon for the sale of the generator. Maixner testified that $300 was for both Fredericks and an unnamed person who helped him steal the generator. The remaining $40 was for Scot.

Both Scot and Fredericks were arrested and charged with dealing in stolen property in violation of § 12.1–23–08.3(1)(a), N.D.C.C. The two defendants were tried separately. Scot was convicted by a jury. As to the charge against Fredericks, the Honorable Dennis A. Schneider determined that "dealing in stolen property" encompasses more than one instance of selling stolen property. Therefore, the charge against Fredericks was dismissed without prejudice pending the outcome of Scot's appeal.

Scot raises the following question on appeal:

Whether or not the State must prove more than one act of selling stolen property in order to convict the defendant of dealing in stolen property.

The offense of dealing in stolen property is set forth in § 12.1–23–08.3(1), N.D.C.C., which provides:

"*12.1–23–08.3. Dealing in stolen property.*

"1. A person is guilty of the offense of dealing in stolen property if he:

"a. Traffics in, or endeavors to traffic in, the property of another that has been stolen; or

"b. Initiates, organizes, plans, finances, directs, manages, or supervises the theft and trafficking in the property of another that has been stolen."

Section 12.1–23–10(12), N.D.C.C., defines "traffic" as follows:

"12. 'Traffic' means:

"a. To sell, transfer, distribute, dispense or otherwise dispose of to another person; or

"b. To buy, receive, possess, or obtain control of, with intent to sell, transfer, distribute, dispense or otherwise dispose of to another person."

In determining whether or not one instance of selling stolen property constitutes "dealing in stolen property", we must analyze § 12.1–23–08.3, N.D.C.C. One of the basic rules of statutory construction is that words are to be used in their ordinary sense. State by Job Service North Dakota v. Dionne, 334 N.W.2d 842, 845 (N.D.1983). The phrase "dealing in stolen property" as used in its ordinary sense connotes activity which is routine or ongoing. Similarly, the term "traffic" as used in its ordinary sense means to "engage in commercial activity; to buy and sell regularly". Webster's Third International Dictionary (1971). As defined in § 12.1–23–10(12), N.D.C.C., however, "traffic" implies that a single transaction of selling stolen property constitutes dealing in stolen property.

A study of the legislative history of § 12.1–23–08.3 reveals that § 12.1–23–08.3 was enacted to facilitate prosecution of fences, *i.e.*, those who deal in stolen property as a routine business, both within and without the State.[1] Section 12.1–23–08.3,

---

1. House Judiciary Committee Minutes on House Bill No. 1559, February 14, 1977; and Senate Judiciary Committee Minutes on House Bill No. 1559, March 8, 1977; Forty-fifth Legislative Assembly, S.L.1977, Ch. 125, §§ 3, 4 & 5.

N.D.C.C., is patterned after a Model Theft and Fencing Act developed by G. Robert Blakey and endorsed by the National Association of Attorneys General [NAAG].[2] The Model Act is designed to curtail the activities of fences, who are described as businessmen engaged in business activities that direct the flow of goods from thief to consumer or user.[3]

The drafters of the Model Act emphasize a distinction between two types of fences: (1) those who purchase or obtain stolen property for resale; and (2) the fences who both initiate thefts and arrange for a subsequent disposal of the stolen property. North Dakota recognizes this distinction as well in subdivisions (1)(a) and (1)(b), respectively, of § 12.1–23–08.3, N.D.C.C. A violation of § 12.1–23–08.3(1)(a) constitutes a class C felony, whereas a violation of § 12.1–23–08.3(1)(b) is a class B felony. In view of the legislative history of § 12.1–23–08.3, it is not likely that the drafters intended the offense of dealing in stolen property to encompass just one instance of selling stolen property. The statute is directed toward the routine business of selling stolen property.

We next examine § 12.1–23–08.3 in light of § 12.1–23–02, N.D.C.C. Section 12.1–23–02, N.D.C.C., provides:

"*12.1–23–02. Theft of property.*—A person is guilty of theft if he:

"1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or

"3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof."

The State could have charged Scot under subsection 3 of § 12.1–23–02. If we held that one instance of selling or otherwise disposing of stolen property constitutes "dealing in stolen property", § 12.1–23–02(3), N.D.C.C., would be somewhat useless. This court has stated that statutes are to be construed in a way which does not render them meaningless. *State v. Nordquist*, 309 N.W.2d 109, 115 (N.D. 1981). The function of this court is to give meaningful effect to two statutes which appear to proscribe the same conduct. *State v. Mees*, 272 N.W.2d 61, 64 (N.D. 1978). In reconciling these two sections, it is likely that § 12.1–23–08.3(1) was designed to prosecute a person who sells stolen property on more than one occasion rather than in one isolated instance. The disposing of stolen property on one occasion is already prohibited by § 12.1–23–02(3), provided the State proves the necessary culpability requirements.

In comparing § 12.1–23–08.3(1)(a) and § 12.1–23–02(3), it is also clear that two different penalties are provided. A violation of § 12.1–23–08.3(1), dealing in stolen property, constitutes a class C felony; whereas a violation of § 12.1–23–02(3), the theft of property provision, constitutes a class B misdemeanor, provided the value of the property stolen is under $250. *See* § 12.1–23–05(4), N.D.C.C. If we were to apply § 12.1–23–08.3(1)(a) to a person who sells stolen property on a single occasion, the penalty would be a class C felony. If that same person was prosecuted under § 12.1–23–02(3), the penalty would be a class B misdemeanor. This disparate treatment was not the likely intention of the drafters.

The two provisions require different standards of culpability as well. Because § 12.1–23–08.3(1)(a) does not specify a culpability requirement, the required culpability is "willfully". § 12.1–02–02(2), N.D.C.C. "Willfully" is defined in § 12.1–02–02(1)(e), N.D.C.C., as:

2. Blakey & Goldsmith, *Criminal Redistribution of Stolen Property: The Need for Law Reform*, 74 Mich.L.Rev. 1511, 1620–1626 (1976).

3. *Id.* at 1523.

*"12.1–02–02. Requirements of culpability.*—1. For the purposes of this title, a person engages in conduct:

. . . . .

"e. 'Willfully' if he engages in the conduct intentionally, knowingly, or recklessly."

Section 12.1–23–02(3), N.D.C.C., requires that the defendant "knowingly" dispose of the stolen property. "Knowingly", as defined in § 12.1–02–02(1)(b), N.D.C.C., means "if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt that he is doing so, whether or not it is his purpose to do so". The drafters of the Model Theft and Fencing Act explain that the less stringent culpability standard of "willfulness" required for the offense of dealing in stolen property is appropriate because it allows for more effective prosecution of sophisticated fences. Blakey and Goldsmith, *Criminal Redistribution of Stolen Property: The Need for Law Reform*, 74 Mich. L.Rev. 1511, 1558–1566 (1976). The defendant who sells stolen property on one isolated occasion is hardly a sophisticated fence. The Model Act is more appropriately aimed at the professional who makes a practice out of selling stolen property.

■ The State argues that even if this court interprets § 12.1–23–08.3(1)(a) as requiring more than one act of selling stolen property to constitute the offense of dealing in stolen property, Scot, in the instant case, has satisfied the requirement. The State asserts that the negotiations conducted at Hardee's, once in the morning and again in the afternoon, constitute two instances of selling stolen property. We disagree. The afternoon meeting was a continuation of the negotiations conducted earlier that day. Therefore, Scot's conduct does not constitute "dealing in stolen property" as we interpret § 12.1–23–08.3, N.D.C.C.

■ We hold that § 12.1–23–08.3, N.D.C.C., requires more than one instance of selling stolen property to constitute the offense of dealing in stolen property. We further determine that the conduct in the instant case does not constitute more than one instance or occasion of selling stolen property. Therefore, based on the foregoing reasons, Scot's conviction is reversed.

The issue which will be raised but which we need not address at this time is how many instances of selling stolen property constitute the offense of dealing in stolen property under § 12.1–23–08.3, N.D.C.C. The Legislature may wish to consider further delineating the circumstances under which a defendant should be prosecuted for the offense of dealing in stolen property.

ERICKSTAD, C.J., VANDE WALLE, J., and PEDERSON, Surrogate Judge, concur.

Surrogate Judge PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.