**In re the MARRIAGE OF Marilyn Kay KUPFERSCHMIDT and Scott Allen Kupferschmidt.**

**Upon the Petition of Marilyn Kay Kupferschmidt, Petitioner–Appellant,**

**and**

**Concerning Scott Allen Kupferschmidt, Respondent–Appellee.**

No. 04–1177.

Court of Appeals of Iowa.

Sept. 14, 2005.

Dennis Naughton of Naughton Law Firm, Marion, for appellant.

Jennifer Clemens–Conlon of Clemens, Walters, Conlon & Meyer, P.C., Dubuque, for appellee.

Considered by SACKETT, C.J., and MAHAN and MILLER, JJ.

SACKETT, C.J.

Marilyn Kay Kupferschmidt appeals the district court's modifications to the child support and college support provisions of the 2000 decree dissolving her marriage to Scott Alan Kupferschmidt. We affirm as modified.

 A petition to modify a decree of dissolution of marriage is triable in equity. Our review, therefore, is de novo. *In re Marriage of Sojka*, 611 N.W.2d 503, 504 (Iowa 2000). A party who seeks a modification of a dissolution decree must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the entry of the decree or its last modification. *In re Marriage of Lee*, 486 N.W.2d 302, 304 (Iowa 1992).

 At the time of the parties' dissolution the district court approved the parties' stipulated decree. The lengthy and detailed decree placed primary physical care of the parties' two children, Katie, born in August of 1985, and Alex, born in March of 1990, with Marilyn. Scott was ordered to pay child support for the children of $213 per week. Additional parts of the decree relevant to this appeal provided that (1) "When only one child is eligible for support, support shall be recalculated;" (2)

> Scott shall be allowed to claim one of the children as a tax exemption on his state and federal income tax returns so long as he is paid current on the child support obligation for the tax year in question.... When only one child qualifies,

the exemption for the child shall be alternated;

(3) some $6,780 in Series EE U.S. savings bonds purchased by Scott and Marilyn were awarded to the children, but Scott's name was to remain on them until the children reached nineteen years of age; and (4) both children had separate accounts held under the Uniform Transfers to Minors Act (UTMA) composed of funds invested by their parents. These accounts were awarded to the children with Marilyn to remain as custodian.[1]

In December of 2003, Scott filed a petition for declaratory judgment and a petition to modify the dissolution decree. He asked the court to determine that the tax exemption for Alex be alternated between he and Marilyn in order to allow both the parties to benefit from the child tax credit associated with claiming this exemption. He further asked that the decree be modified to reduce his child support obligation to support for only Alex in June of 2004, as Katie would have turned eighteen and graduated from high school by that time. Marilyn answered Scott's petition contending the petition for declaratory judgment should be dismissed. She counterclaimed asking that a college support subsidy be established and that the court deviate from the child support guidelines and order Scott to pay additional child support for Alex.

A hearing was held, and on June 3, 2004, the district court modified the decree. Katie had reached eighteen and graduated from high school, so the court fixed child support for Alex, the one remaining child, at $598.67 per month. Scott was given

---

1. The purpose of UTMA transfers is to provide for making gifts to minors and avoid establishing a guardianship or trust. *See In re Marriage of Rosenfeld*, 668 N.W.2d 840, 844 (Iowa 2003). When a transfer to a minor is made under the UTMA, the donor relinquishes his or her title to the property. *See In re* *Marriage of Hoak*, 364 N.W.2d 185, 189 (Iowa 1985). Once the gift is made, it is irrevocable. *Rosenfeld*, 668 N.W.2d at 844. Transfers under UTMA are made as a way to gift funds to a minor while giving discretion to a designated custodian to manage the funds. *Id.*

Alex's income tax exemptions for 2003 and 2004 and after that time Alex's exemption was to be alternated with Marilyn having the exemption in 2005. The court also made provision for a postsecondary education subsidy for Katie that involved utilizing the U.S. savings bonds and the fund that had been transferred to the children under the UTMA, over which Marilyn was trustee. Marilyn was given Katie's income tax exemption for 2003 and 2004.

**Child Support.** Marilyn contends the child support award should not have been modified and/or was not correctly modified because (1) there was no change in circumstances, (2) the district court averaged Scott's income in computing his income for purposes of applying the child support guidelines, (3) the district court did not consider Scott's earning capacity or history of his earnings in computing his income, and (4) there should have been a deviation from the guidelines because it is more expensive to raise Alex, a boy, than it had been to raise Katie, a girl.

■ We recognize, as Marilyn argues, that to modify child support one must establish by a preponderance of the evidence that there has been a substantial change in the circumstances of the parties since the entry of the decree. *In re Marriage of Maher,* 596 N.W.2d 561, 564–65 (Iowa 1999).

■ Clearly when a child support award is based on two qualifying children and one no longer qualifies, there has been a substantial change in circumstances. Additionally, a substantial change exists where, as here, "the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines...." Iowa Code § 598.21(9) (2003). And even if that were not the case, the parties here agreed child support would be recalculated when only one child

qualified for child support. There is no basis to Marilyn's position that the child support award was not modifiable when Katie no longer qualified for child support. That said it appears Marilyn also argues that if the child support is modified, the parties' incomes at the time of the dissolution decree should be used to establish the child support for Alex. She also makes the alternate argument that Scott's income should be computed based on his 2003 earnings.

■ Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and noncustodial parent at the time of the hearing. *See In re Marriage of Powell,* 474 N.W.2d 531, 534 (Iowa 1991) (holding the court must determine the parents' current income from the most reliable evidence presented); *In re Marriage of Lalone,* 469 N.W.2d 695, 696 (Iowa 1991) (holding that application of child support guidelines chart first involves determination of the net monthly income of each parent); *In re Marriage of Miller,* 475 N.W.2d 675, 678 (Iowa Ct.App.1991) (holding that the first step in using the child support guidelines is to arrive at "net monthly income"). Yet the translation of income to "net monthly income" as defined by the guidelines is not an exact science. *See In re Marriage of Gaer,* 476 N.W.2d 324, 329 (Iowa 1991); *State ex rel. Dep't Human Servs. v. Burt,* 469 N.W.2d 669, 671 (Iowa 1991); *In re Marriage of Cossel,* 487 N.W.2d 679, 682 (Iowa Ct.App.1992).

■ At the time of the decree Scott's income was $54,439, in 2000 it was $48,249, in 2001 it was $47,743, in 2002 it was $52,386, and in 2003 it was $55,792. The 2003 income included a $3,000 one-time signing bonus on a six-year contract. The district court averaged Scott's income between the years of 2001 and 2003 and set

his income at $51,174 for purposes of determining child support. Marilyn wants Scott's income set at $54,439 (time of decree) or $55,792 (2003 income including the signing bonus). Marilyn contends the income of a wage-earner should not be averaged. We are inclined to agree with Marilyn that in most cases the income of a wage-earner with steady employment need not be averaged. *See In re Marriage of Hagerla,* 698 N.W.2d 329, 332 (Iowa Ct. App.2005). In *Hagerla* we found income averaging was not supported by the facts where the noncustodial father was employed at a wage and the fluctuations in his income were the result of earnings from prior employment, as distinguished from Scott's situation where variations in income have come from the same long-term employment. *Id.* Since the time of the dissolution Scott has worked at the same hourly wage. He has at all times material had occasions to work overtime. Overtime pay was considered in fixing his initial child support obligation. However, the evidence of his income since that time shows his overtime pay is variable and he received a one-time bonus in 2003. In determining a parent's income before applying the guidelines we look both to bonus income and overtime income.

**Overtime Pay.** Overtime wages are not excluded as income. *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992). Overtime wages are within the definition of gross income to be used in calculating net monthly income for child support purposes. *Id.* This conclusion does not necessarily mean, however, that a court must steadfastly adhere to the appropriate child support amount as determined by the guidelines using overtime pay if the amount results in injustice between the parties. *Id.* In circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines may be appropriate. *Id.; see also In re Marriage of Close,* 478 N.W.2d 852, 854 (Iowa Ct.App.1991). Yet a parent's child support obligation should not be so burdensome that the parent is required to work overtime to satisfy it. *Brown,* 487 N.W.2d at 333. However, the district court must make a specific finding to that effect. *Id.*

Scott's overtime has not been consistent and will not be consistent, and it is somewhat voluntary, although he testified he always takes it when available, as contrasted to *Brown* where the court in including overtime pay found it had been consistent and would be consistent and found no basis for deviation from the amount of child support specified by the guidelines. *See id.*

**Bonus Income.** In considering whether to include Scott's one-time bonus in his income for the purpose of determining child support, we evaluate the situation to see if the amount paid was consistent from year to year. *See In re Marriage of McCurnin,* 681 N.W.2d 322, 329 (Iowa 2004); *In re Marriage of Nelson,* 570 N.W.2d 103, 105 (Iowa 1997). If the bonus was consistent, the bonus is included in the gross income figure. *McCurnin,* 681 N.W.2d at 329. However, in the present case we are dealing with a one-time bonus, which in *Nelson,* 570 N.W.2d at 105, was not included in calculating guideline child support.

In a case where the employment contract of the parent makes overtime pay inconsistent and where the bonus income was a one-time occurrence, it is reasonable for the district court to calculate the parent's income by averaging it over the term of the contract. "It is unrealistic and unfair to fix child support obligations based solely on the most recent periodic income amounts." *In re Marriage of Robbins,* 510

N.W.2d 844, 846 (Iowa 1994). Scott's income varies and is expected to vary. The translation of the income of a self-employed person or an employed person who has varying wages to a monthly "net income" is difficult. *Cossel,* 487 N.W.2d at 682. We also recognize the district court needs to be given some discretion in making computations. That said the district court did, contrary to Marilyn's argument, consider Scott's earnings, his earning capacity, and his earnings history.

In conclusion, we have considered Marilyn's arguments as to why the income amounts considered by the district court were not correct and why the computation of Scott's income made by the district court was not fair and equitable and we find no valid reason to modify the trial court determination of either Scott's or Marilyn's net monthly income. *See In re Marriage of Crotty,* 584 N.W.2d 714, 718 (Iowa Ct.App.1998). We affirm on this issue.

**█ Deviation from Guidelines.** Marilyn contends the district court abused its discretion in denying her request for an upward deviation from the guidelines. She supports her argument with evidence that car insurance is more expensive for a son than for a daughter.

**█** The child support guidelines take into account the reasonable costs of living, including educational expenses, for dependent children. *In re Marriage of Gordon,* 540 N.W.2d 289, 292 (Iowa Ct.App.1995). Expenses for clothes, school supplies and recreation activities are considered under the guidelines, and a separate support order covering such expenses is improper absent a finding that the guidelines amount would be unjust or inappropriate.

Iowa Court Rule 9.11 provides:

The court shall not vary from the amount of child support which would result from application of the guidelines without a written finding that the guidelines would be unjust or inappropriate as determined under the following criteria:

(1) Substantial injustice would result to the payor, payee, or child.

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or payee under the special circumstances of the case. . . .

Alex is a normal child with no mental or physical disabilities and no specific special needs. The guidelines are gender-neutral and make no provision for the court to determine, as Marilyn asks here, whether the cost to raise a son is more or less than the cost to raise a daughter. The district court did not abuse its discretion in refusing to deviate from the guidelines based on the gender of the child to be supported. The trial court properly applied the child support guidelines based on its determination of the income of the parties to be applied to the guidelines and the resulting guideline amount of child support ordered is presumptively correct. *See* Iowa Ct. R. 9.4. We affirm on this issue.

**█** Marilyn next contends the district court should not have used the savings bonds purchased by her and Scott and the funds they transferred to the children under the UTMA to satisfy the responsibility she and Scott had to provide a postsecondary education subsidy. Marilyn contends the district court exceeded its jurisdiction in so doing. She contends the property is owned by the children and the district court took it from the children without process of law.

The district court found Scott, Marilyn, and the respective child are obligated to contribute one-third of the total expense associated with an average of the three

in-state university tuition expenses.[2] This one-third amount shall be calculated per year based on tuition, computer fees, mandatory health fees, healthy facility fees, books and housing needs of the student.

The court then went on to determine that, what it referred to as the money that has been invested for the children's education held in bonds and UTMA accounts, should be used over a four-year period and the parental contribution shall be calculated by dividing the total investment funds by four (for the annual contribution) and then by half (for each parent) and that money should annually be first used as the parent's contribution. After that calculation has been made, the parents shall pay the balance, and the court directed how each parent's contribution could be paid to the child or the institution. The court, in response to a motion filed pursuant to Iowa Rule of Civil Procedure 1.904, also provided that the Hope tax credit should be subtracted before the balance the parents are to pay is determined.

There was evidence the bonds were purchased and the UTMA transfers were set up for the purpose of helping the children pay for their college educations. We agree with Marilyn that the property belongs to the children and should not be taken from them absent constitutional safeguards. Consequently, we strike that part of the district court's order that directs how the children's funds should be spent. However, how the children's money should be spent was not the issue before the district court nor is it the issue here. The district court was asked to determine what subsidy, if any, Scott and Marilyn should be ordered to pay for postsecondary education of their two children.

Iowa Code section 598.21(5A) does not demand but permits a court to order either party to a divorce to subsidize the postsecondary educational expenses of a child if good cause is shown. *See also* Iowa Code § 598.1(8). The child must be between eighteen and twenty-two years of age and either regularly attend vocational/technical training, be a full-time college student, or be "accepted for admission to a college" for the next regular term. *Id.* The subsidy payment is known as a "postsecondary education subsidy." *Id.*

■ This obligation to support adult children is not imposed on parents still married to each other nor is it imposed on parents who have never married. *See Johnson v. Louis,* 654 N.W.2d 886, 891 (Iowa 2002). The educational benefit is a quid pro quo for the loss of stability resulting from divorce hardships. *Id.*

To determine if good cause exists for a postsecondary education subsidy, the court considers the child's age, postsecondary educational ability, financial resources, and whether the child is self-sustaining. Iowa Code § 598.21(5A)(a). The court also considers "the financial condition of each parent." *Id.* If good cause exists for a subsidy, the amount is then determined by apportioning between the parents the amount of the educational expenses the child cannot reasonably be expected to pay. Iowa Code § 598.21(5A)(a)(3).

The statute directs the court to first determine the "cost of postsecondary education based upon the cost of attending an in-state [undergraduate] public institution." Iowa Code § 598.21(5A)(a)(1). The cost must "include the reasonable cost for only necessary postsecondary education expenses." *Id.* After this cost component is determined, the court next determines

2. This finding is not challenged. (Footnote added.)

the amount the child "may reasonably be expected to contribute" to the payment of the costs in light of the child's financial resources. Iowa Code § 598.21(5A)(a)(2). In determining a child's financial resources, the court considers "the availability of financial aid whether in the form of scholarships, grants, or student loans," as well as "the ability of the child to earn income while attending school." *Id.*

The subsidized amount subject to apportionment among the parents is then determined by subtracting the amount of the child's expected contribution from the postsecondary education expenses. Iowa Code § 598.21(5A)(a)(3); *In re Marriage of Vannausdle*, 668 N.W.2d 885, 887 (Iowa 2003). However, an amount apportioned to a parent cannot exceed one-third of the total postsecondary education cost. Iowa Code § 598.21(5A)(a)(3).

 The two accounts established by Scott and Marilyn are available to their children for purposes of financing the children's postsecondary education and the evidence established Scott and Marilyn set the accounts up for that purpose. Consequently, it is only fair to consider this money as a resource available to the children, as the district court did, prior to determining the parents' subsidy. *See In re Marriage of Rosenfeld*, 668 N.W.2d 840, 848 (Iowa 2003). To do otherwise would discourage parents from saving for the postsecondary education of their children through the use of bonds and transfer of assets under the UTMA. If the children choose, once they become of legal age, not to spend the money for postsecondary education contrary to their parents' initial intent that is their privilege.[3] But the children's right to utilize the money for other purposes should not impose on their parents a larger subsidy. Rather, it is equitable to charge the child with having the funds available to use for postsecondary education in fashioning the educational subsidy. *See Rosenfeld*, 668 N.W.2d at 848. In *Rosenfeld*, the court asserted, where the father had provided funds for college under the UTMA, "it cannot be said 'good cause' under Iowa Code section 598.21(5A) exists for ordering Rosenfeld [father] to contribute more than he has already done in creating Natalie's [daughter's] accounts." *Id.* at 846. We strike the provision of the decree directing payment from the children's funds from their savings bonds and UTMA, modifying the decree to provide that the bonds and UTMA transfers shall be considered as assets available to the children and subtracted before computing the parents' shares in the manner provided by the district court. We address the Hope tax credit in conjunction with the children's tax exemptions below.

---

3. A transfer under UTMA is governed by Iowa Code section 565B.14(1) which provides:

 A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to:

 a. The duty or ability of the custodian personally or of any other person to support the minor; or

 b. Any other income or property of the minor which may be applicable or available for that purpose.

Iowa Code § 565B.14(1) (1999). The custodians of a transfer under UTMA may use their discretion to make expenditures on behalf of the minor. *Rosenfeld*, 668 N.W.2d at 844. Neither the simple creation of an UTMA account, nor the parents' educational intent in creating the account, transforms the UTMA account into a trust. *Id.* Testimony at trial assuring the court that the parent had taken financial measures to assure the children's educations does not elevate the UTMA accounts to a trust. *Id.*

■ Marilyn also contends the district court abused it discretion in changing the exemptions for income tax purposes. The district court gave the exemption to Scott for Alex in 2003 and 2004 and then alternated Alex's exemption, with Marilyn taking it in 2005. Marilyn was given Katie's exemption in 2003 and 2004.[4] She was then to get the Hope tax credit[5] for Katie but, as set out above, it was applied before the parents' subsidy was determined.

While under federal law the custodial parent is presumed to be entitled to claim the exemption for a child receiving child support, the Iowa Supreme Court has suggested that the federal government does not care who takes the exemption only that the exemption is taken by just one parent. *In re Marriage of Rolek*, 555 N.W.2d 675, 678–79 (Iowa 1996). The court consequently has determined that tax exemptions for children subject to child support may be allocated by the district court. Additionally, the supreme court has said that allocations of these tax exemptions, being directly related to child support, are subject to the general rules for modification of child support. *Id.* at 675; *In re*

4. There is a five-part test for determining whether a person can be counted as a dependent on a taxpayer's return. Internal Revenue Serv., Dep't of the Treasury, Your Federal Income Tax (Publication 17) 29 (2004); *see also* 26 U.S.C. §§ 151–152 (2003). In order for a taxpayer to claim a person a dependent, the IRS, in its publication *Your Federal Income Tax*, advises that all of the following dependency tests must be met:

1) Member of Household or Relationship Test. At least one of the following must be true:

The dependent lived with the taxpayer for the entire year as a member of the taxpayer's household, except for temporary absences. Temporary absences include attending school, taking vacations, business trips, military service, and hospital stays; or the dependent is related to the taxpayer in one of the following ways: child, parent, brother/sister, stepparent, stepchild, stepbrother/stepsister, half brother/half sister, grandparent, grandchild, son-in-law/daughter-in-law, mother-in-law/father-in-law, brother-in-law/sister-in-law.

2) Citizen or Resident Test. The dependent must be, for some part of the year, a U.S. citizen or resident, or a resident of Canada or Mexico. Foreign students who stay with you as part of an international education exchange program generally do not qualify as dependents.

3) Joint Return Test. The dependent must be unmarried, married but not filing a joint return, or married filing a joint return only to claim a refund of withheld tax (neither the dependent nor spouse may claim personal exemptions on the joint return).

4) Gross Income Test. The gross taxable income of the dependent may not exceed the exemption amount. In 2004 the exemption amount was $3,100. This test does not apply if the dependent is a child of the taxpayer and either under age nineteen at the end of the year, or a full-time student under age twenty-four at the end of the year.

5) Support Test (for divorced parents).

General rule—parent with custody for the greater part of the year is generally treated as the supporting parent; it doesn't matter whether the custodial parent actually provided more than half of the child's financial support.

Written declaration—the custodial parent, by use of IRS Form 8332 (or a similar statement with the required information), may release the dependent child exemption to the non-custodial parent. The exemption may be released for a single year or for a number of specified years (i.e. alternating years).

5. In general, a parent can take credits for dependent students. 33 Am. Jur. 2d *Federal Taxation* § 1533, at 617–18 (2005). However, if the student is not claimed as dependent only the student can claim the credits. *Id.* For the Hope credit, the taxpayer can take a credit of up to $1500 for qualified educational expenses (tuition and fees) of each student where the student is enrolled in a program that leads to degree, certificate or other recognized education credential and the student is taking at least one-half of a normal full-time workload. 33 Am. Jur. 2d *Federal Taxation* § 1526, at 616 (2005).

*Marriage of Habben,* 260 N.W.2d 401, 403 (Iowa 1977).

Marilyn contends the same position should not be taken with reference to adult children who are receiving a college subsidy. We are inclined to agree.

The legislature has made no provision in section 598.21(5A) for the allocation of tax exemptions or any other tax credits. *See Johnson,* 654 N.W.2d at 889 (where court looked to specific language of the statute in determining an illegitimate child was not subject to the subsidy). Furthermore, in determining child support, the Child Support Guidelines specifically provide for the consideration of a parent's state and federal income tax liability. *See* Iowa Ct. R. 9.5.[6] Consequently, the amount of child support ultimately owed under the guidelines is dependent on the allocation of tax exemptions and credits. Such is not the case with a college subsidy. Furthermore, in the situation with a minor child subject to child support, it generally is only a question of which parent is entitled to the child's exemption. With an adult child the issue becomes more complex because the child's own claim to the exemption and the Hope credit is also an issue. The postsecondary education subsidy has been carefully prescribed. It does not provide for the allocation of the tax exemptions of children subject to the subsidy. Furthermore, the record here is insufficient to determine an equitable allocation of the exemption and credit.[7] Nor is Katie, who in order for her

parents to claim the exemption and the credit would be required not to claim herself as an exemption, a party to this appeal.

We strike the provision for consideration of the Hope credit in determining the education subsidy. We strike the provision allocating Katie's exemption and the accompanying Hope credit to Marilyn for the years 2003 and 2004. We provide Marilyn shall do what is necessary to see that Scott can claim Alex's exemptions in 2003 and future odd-numbered years when Alex is yet subject to child support and Scott should do the same for Marilyn in 2004 and in even-numbered years when Alex is yet subject to child support.[8]

Marilyn contends she should have been awarded attorney fees by the district court and asks for attorney fees on appeal. We review for an abuse of discretion. *In re Marriage of Van Ryswyk,* 492 N.W.2d 728 (Iowa Ct.App.1992). The district court did not abuse its discretion in not awarding her attorney fees, and no attorney fees are awarded to either party on appeal. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**

---

**6.** Rule 9.5 provides in part:
 In the guidelines the term "net monthly income" means gross monthly income less deductions for the following:
 (1) Federal income tax (calculated pursuant to the guideline method).
 (2) State income tax (calculated pursuant to the guidelines method).

**7.** There maybe situations where the record is such that the court should consider the credit

as the amount the child may reasonably be expected to contribute pursuant to section 598.21(5A)(a)(2). However, the record here is insufficient for us to consider this issue.

**8.** Whether this can be accomplished by amended tax returns is not clear. If it cannot the parties should determine what taxes would have been under the modified order and compensate each other.