**IN THE COURT OF APPEALS OF IOWA**

No. 3-1252 / 13-0774
Filed April 16, 2014


**IN RE THE MARRIAGE OF KARI L. FRANZEN
AND JOSHUA J. FRANZEN**

**Upon the Petition of
KARI L. FRANZEN,**
        Petitioner-Appellee,

**And Concerning
JOSHUA L. FRANZEN,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Winneshiek County, Margaret L.

Lingreen, Judge.


        A husband appeals the physical care, child support, and property

distribution provisions of the decree dissolving his marriage.  **AFFIRMED AS**

**MODIFIED.**


        Kevin E. Schoeberl of Story & Schoeberl Law Firm, Cresco, for appellant.

        Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, L.L.C.,

Decorah, for appellee.


        Heard by Vogel, P.J., and Doyle and Mullins, JJ.  Bower, J, takes no part.

**VOGEL, P.J.**

Joshua Franzen appeals the provisions of the decree dissolving his marriage to Kari Franzen. Joshua contends on appeal the district court should have placed the minor children in the parties' shared care rather than in Kari's physical care. In the event we do not modify the physical care provisions, Joshua seeks an increase in his overnight visitation and a modification of his child support. He also maintains the district court assigned an incorrect value to the parties' marital home and should not have ordered him to pay Kari a cash settlement award in light of his premarital assets. Kari defends the district court decree and asks for appellate attorney fees.

Because we find the best interests of the children are served by placing them in Kari's physical care subject to the visitation for Joshua ordered by the court, we affirm the physical care provisions of the dissolution decree. We also affirm the court's child support order as we determine it correctly calculated the parties' incomes. We modify the property distribution to address an investment account that was missed by the district court and remove the cash settlement award to give Joshua credit for the premarital property he brought into the marriage. Finally, we decline to award appellate attorney fees in this case.

**I. Background Facts and Proceedings.**

Joshua and Kari were married in 1997, at the age of twenty and nineteen, respectively. Neither party came into the marriage with any significant premarital asset, except for a $60,000 personal injury settlement Joshua received shortly after the marriage that was the result of an automobile accident that occurred prior to the marriage. Joshua asserts the funds were used to purchase two

vehicles, make down payments on two of the family's homes, and pay for Kari's college tuition/student loan debt.

The parties have two minor children born during the marriage, who were five and three years old at the time of trial. Kari has operated her own interior design business during the marriage, and Joshua has worked full time for Blessing Industries earning $21.00 per hour. Both parties maintain they have a flexible work schedule to permit them to care for the children as needed. Insurance for the children is provided by Joshua through Hawk-I with a premium of $20.00 per month.

The parties constructed the current martial home near Joshua's parents' residence. The parties signed a shared-well agreement with Joshua's parents to gain access to the well located on the parents' property. The agreement is applicable to their successors in interest. Joshua had an appraisal done of the home which placed a value on the home of $250,000 and a value of $15,700 on the adjoining property where Joshua maintains a vineyard. The appraisal noted the shared-well agreement and provided the $250,000 value assumed the current source of potable water would continue. If that situation were to change, the value of the house would drop to $224,000[1] due to the cost of drilling a new well on the property.

The case proceeded to trial in January 2013, where both parties testified along with family members, friends, and a clinical social worker, who provided Joshua counseling services. The district court issued its decision on April 18,

---

[1] The appraiser estimated the cost to provide a new well and delivery system would be approximately $26,000 based on bids he received.

2013, granting the parties joint legal custody of the children and placing them in Kari's physical care subject to Joshua's visitation rights, which include every Tuesday evening, every Thursday overnight, and alternating weekends from Friday evening until Sunday evening. The court also provided Joshua thirty overnights during the summer in addition to his regular Thursday overnight and alternating weekends. The court ordered the parties to alternate various holidays. The court divided the property and debt, finding the value of the house to be $250,000 and determining its value was not affected by the shared-well agreement. The court also concluded Joshua was not entitled to have $60,000 in assets set aside to him as a result of the personal injury settlement. The court noted the length of the marriage, the fact that both parties worked throughout the marriage, and Kari's role as the primary caregiver as the reasons for not warranting a significant departure from a near equal distribution. Because of the disparate property distribution, the court ordered Joshua to pay a cash settlement to Kari in the amount of $22,000. Joshua filed a motion to enlarge, amend, or modify the court's decree, which was largely denied by the district court.[2] Joshua now appeals.

## II. Scope and Standard of Review.

Our review of a dissolution action is de novo because the case was tried in equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and adjudicate the issues anew, though we give weight to the factual findings of the district court, especially its determinations of

---

[2] The district court did provide a further explanation as to how it arrived at the annual income amount for Kari, but it did not change the amount of the child support.

credibility. *Id.* With respect to the property distribution, the district court's decision will be disturbed only where there has been a failure to do equity. *Id.* When deciding what physical care arrangement should be ordered, we consider the best interests of the children. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

## III. Physical Care.

Joshua asserts the district court should have placed the children in the parties' shared care, rather than in Kari's physical care. Contrary to the district court's finding, he contends the parties "provided appropriate and equal care for the children" during the marriage. He contends the record shows there were some communication issues but nothing significant related to the children that would weigh against a shared care arrangement. He also points to the testimony of his counselor, who stated in her opinion shared care is in the best interests of the children.

The district court concluded Kari had historically been the parent providing for the children's needs, though it did acknowledge Joshua has participated in caring for the children when they were sick and has shown himself able to provide for the children's needs. The court was concerned with Joshua's inability or unwillingness to communicate with Kari about the children, particularly his taking the children to appointments with doctors, dentists, social workers, and counselors without providing Kari notice. This occurred during the pendency of the dissolution action after Kari had been designated as the physical care provider in the temporary order. The court was also concerned that Joshua had taken the children to a different church and had registered the younger child for

preschool without consulting Kari. This lack of communication led the court to determine joint physical care was not in the children's best interests.

An important factor in determining whether joint physical care is in the children's best interest is the ability of the spouses to communicate and show mutual respect. *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). The communication that occurred during the pendency of the dissolution was concerning to the district court and clearly does not demonstrate the parties mutually respect each other. Specifically, Joshua overwhelmed Kari with text messaging about issues unrelated to the children. Kari went so far as to block Joshua's ability to send her text messages as she reported receiving as many as forty-seven messages in an eight-hour period. In addition, Joshua did not demonstrate respect for Kari as a co-parent when he scheduled the children for various healthcare appointments without informing Kari. It is also concerning that Kari needed to seek court intervention when Joshua failed to respond to her requests to allow the children to attend her sister's wedding during Joshua's visitation time, while she, by contrast, was willing to accommodate his additional visitation requests. We agree with the district court's assessment of the parties and conclude it was correct in placing the children in Kari's physical care.

As an alternative to shared care, Joshua asks that his visitation be expanded. He asks that the additional visitation he requested in his motion to reconsider be granted. This additional visitation would include an additional overnight during the week occurring on Tuesdays, an additional fifteen days of summer visitation, along with the ability to have the children for twelve

consecutive nights. He also asked for increased holiday visitation. His requests were denied by the district court.

We note the visitation schedule ordered by a court should provide the children "the opportunity for the maximum continuing physical and emotional contact with both parents." *See* Iowa Code § 598.41(1)(a) (2011). The thirty days of summertime visitation ordered by the court was in addition to Joshua's regular overnight visitation of every Thursday and every other weekend. The court also provided that both parties were entitled to seven consecutive uninterrupted overnights during the summer. We conclude this schedule does provide for both parents to have maximum time with the children in the summer, and we conclude it is not in the best interest of the children, especially considering their young age, to grant Joshua's request for twelve consecutive uninterrupted nights during the summer. We note during trial both Joshua and Kari contended that having a care arrangement where the children were away from one parent for a week at a time was not in the children's best interest. We also agree with Kari that adding an additional overnight every Tuesday would unnecessarily disrupt the children's schedule and not be in their best interests. We decline Joshua's request to modify the visitation schedule.

## IV. Child Support.

Joshua also asks that we modify the child support award. He contends the court incorrectly calculated his and Kari's income. He also asks that he be permitted to claim both children as tax exemptions.

The district court concluded Joshua's annual income for the purposes of calculating child support was $53,345. This was based on Joshua's 2012 year-

to-date earnings along with overtime and profit sharing he had received. The court concluded that while overtime and profit sharing were not guaranteed, both were routinely awarded. Joshua asserts his profit sharing and overtime should not be included in the calculation and claims his income should be based solely on forty hours per week at $21.00 per hour.

Overtime and bonus income is to be considered in determining the appropriate support amount under the child support guidelines. *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333 (Iowa Ct. App. 2005). However, "[i]n circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines may be appropriate." *Id.* The overtime and bonus pay Joshua receives does not appear to be an anomaly or speculative on the current record. We therefore find the district court correctly determined his income based on the record presented.

Joshua also asserts Kari should not be allowed to deduct her health insurance to reduce her net income from her design business. However, we note the district court already specifically disallowed Kari's deduction of her health insurance premiums and her meal expenses. However, it did allow her other expenses including the wages she pays to her support staff, office supplies, advertisement, and liability insurance. Beside the health insurance, it is unclear what expenses Joshua thinks should not be deducted from Kari's gross income from her business. Upon our review of the record, we conclude the district court correctly determined her income for the purposes of calculating child support.

We note, as did the district court, that Joshua stipulated for he and Kari to each claim one child as an income tax exemption. Joshua first indicated his

desire for both tax exemptions in his posttrial motion for reconsideration. We affirm the district court's refusal to grant Joshua's posttrial motion and thus affirm the child support calculation.

**V. Property Distribution.**

Finally, Joshua challenges a number of findings by the district court with respect to the property distribution. He contends the court should have reduced the value of the home by the cost to install a new well because the current well on his parent's property, which is the subject of the shared-well agreement, is inadequate and in need of repairs. He also asserts the court should have accounted for the $4000 in mortgage payments he made since the parties separated. He challenges the value the court assigned to the vehicle Kari acquired during the pendency of the dissolution proceeding. He asserts the court failed to acknowledge and distribute an account at John Hancock in the amount of $7542.00.[3] He challenges the value assigned to the First Citizens bank accounts and claims he should not be required to make a property equalization payment in light of the $60,000 personal injury settlement he brought into the marriage.

Iowa is an equitable distribution state. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property." *Id.* This includes property a party brings into a marriage. *Id.* "Property brought into the marriage by a party is merely a factor to consider by

---

[3] The parties stipulated the value of the account was $7542.00; however, the exhibit admitted by Joshua in support of this account noted the value of the account was $7303.22. We will use the parties' stipulated amount.

the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage." *Id.* We refuse to disturb the district court's valuation of an asset where it is within the permissible range of evidence. *McDermott*, 827 N.W.2d at 679.

With respect to the vehicle Kari acquired during the dissolution proceeding, she testified it was worth $11,000. While Joshua asserted the vehicle was worth $16,000, he admitted he did not have critical information about the vehicle that would affect its value. We find the court's valuation assigned to the vehicle was within the permissible range of evidence, and we will not disturb it here. *See id.* Similarly, we accept the court's valuation of the First Citizens accounts at $1268. Joshua points to the pretrial stipulation where he asserted—but Kari did not agree—the accounts had a value of $200; however, Joshua submitted an exhibit as evidence at trial which showed the accounts, as of September 7, 2012, had a value of $1268.45. Had the value of the accounts changed by the date of trial, Joshua failed to provide any more current information. As the district court's valuation is within the permissible range of evidence, we accept it on appeal.

The John Hancock account was identified in the pretrial stipulation of the parties, and it appears the parties agreed on the amount but did not agree as to who should be assigned the value. During his trial testimony, Joshua agreed to split the value of that account along with the other retirement accounts, but in his posttrial motion, he requested he be awarded the value of the account. The district court failed to identify and award the value of the account in its decision,

and we therefore modify the decision to award one-half of the value of the John Hancock account to each party.

The house was constructed with no independent access to water, but the parties signed a shared-well agreement with Joshua's parents where they would draw water from the well on Joshua's parents' property and in exchange be responsible for a proportion of the maintenance of the well. The agreement contained the legal description of the three parcels the well would serve, so that it would run with the land. While Joshua testified the well was no longer providing adequate water and was in need of repair, Kari testified there was no need to install a new well on the property. The appraiser's report noted the cost of a new well should be figured into the value of the home in the event the house's source of potable water would no longer continue. There was no evidence to support Joshua's assertion the well was in need of repair or replacement. Because the shared-well agreement was transferable to future owners of the home, the district court was correct in concluding the value should not be affected by the fact it shares a well with Joshua's parents. Further, no additional consideration should be granted to Joshua in light of the mortgage payments he made during the dissolution proceeding as he remained living in the home from August 2011 until the time of trial in January 2013.

Finally, after distributing all assets and debt to the parties, the court awarded Kari a cash settlement award of $22,000. A review of the assets and debts indicates this settlement was due to the disparate value of net assets assigned to each party. Kari's distribution totaled approximately $36,000, while Joshua's distribution was approximately $80,000, making the difference $44,000.

With our modification awarding each party one-half of the John Hancock account, the difference remains the same though Kari's net distribution increases to just under $40,000 and Joshua's distribution is just over $84,000.

However, Joshua asks that he not be ordered to make the cash settlement payment in light of the $60,000 personal injury settlement he brought into the marriage. The district court refused this request, concluding the length of the marriage and the contribution of each party during the marriage did not justify setting any of his premarital property aside. We disagree. Joshua testified he used $22,000 of the settlement to make a down payment on the parties first home and $14,000 of the settlement to make a down payment on the parties second home. The remainder of the settlement money was used to purchase vehicles and pay off Kari's educational expenses. To the extent the money from the settlement can be traced to a current asset of the parties, in this case the homes the parties occupied during the marriage, we find it equitable that Joshua be given consideration for these funds. It was due to Joshua's substantial infusion of cash to the marriage that put the parties in a favorable financial position when purchasing their marital homes. Thus, we find it appropriate to remove the requirement Joshua pay to Kari a cash settlement award to equalize the property distribution. In light of Joshua's premarital assets, it is equitable for there to be a slightly unequal property distribution. *See In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009) ("An equitable division does not necessarily mean an equal division of each asset. Rather, the issue is what is equitable under the circumstances." (internal citation omitted)).

We modify the decree to provide Joshua shall not be required to make a cash settlement payment to Kari and the parties are to divide equally the value of the John Hancock account. All other provisions of the property distribution are affirmed.

## VI. Appellate Attorney Fees.

Kari requests an award of appellate attorney fees in this matter.

> An award of appellate attorney fees is not a matter of right but rests within our discretion. In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal.

*In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). After considering these factors, we decline to award appellate attorney fees in this case.

Costs on appeal are divided one-half to each party.

**AFFIRMED AS MODIFIED.**