# IN THE COURT OF APPEALS OF IOWA

No. 22-1361
Filed May 24, 2023

IN RE THE MARRIAGE OF RONALD DEAN HORACEK
AND WANDA KAY HORACEK,

Upon the Petition of
RONALD DEAN HORACEK,
        Petitioner-Appellee,

And Concerning
WANDA KAY HORACEK, n/k/a WANDA KAY JENSEN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer,

Judge.


        Wanda Horacek appeals from the spousal-support award in the decree

dissolving her marriage to Ronald Horacek. **AFFIRMED AS MODIFIED.**


        Jay P. Phipps of Phipps Law Office, PLC, Moville, for appellant.

        Elizabeth A. Rosenbaum of Rosenbaum Law Firm, P.C., Sioux City, for

appellee.


        Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Wanda Horacek appeals the spousal-support award in the decree dissolving her marriage to Ronald (Ron) Horacek. She contests the district court's award of rehabilitative spousal support in the amount of $700 per month for twenty-four months, claiming she is entitled to traditional spousal support for the remainder of her life in the amount of $1500 per month. In addition, she asks for $4750 in appellate attorney fees. Ron asks us to affirm the decree and award him $5887 in appellate attorney fees.

## I. Background Facts and Proceedings.

Ron and Wanda were married in December 1996. The couple had three children, one of which was still a minor at the time of the 2022 dissolution. Both Ron and Wanda have high-school equivalent degrees[1]; neither pursued further formal education. During the marriage, Ron worked numerous jobs in the pipeline industry, primarily as an inspector.[2] Over time, through experience and on-the-job training, Ron earned a comfortable living for the family. And while Ron suffers from diabetes, high blood pressure, and high cholesterol, none of these conditions have prevented him from working or reaching his full earning capacity. The parties lived comfortably, but did not live an extravagant lifestyle during the twenty-five-year marriage. After considering Ron's fluctuating income over the years, the district court attributed an annual income of $80,697.33 to him. Ron, who was then fifty-

---

[1] Ron achieved a GED, and Wanda has a high school diploma.
[2] Ron was laid off from his employment just days before trial, but both parties testified it was not uncommon for him to be off for several weeks each year.

four years old, testified he wanted to retire in about ten years. Wanda was then fifty-three.

Wanda did not work outside the home throughout the majority of the marriage and instead cared for and supported the family while Ron was away for work, often for months at a time. In the three years prior to the April 2022 dissolution trial, Wanda worked as a grocery store clerk, and in 2021 earned $22,000. In the months leading up to trial, Wanda's health declined and she was diagnosed with and treated for a number of ailments including osteoarthritis, fibromyalgia, anxiety, post-traumatic stress disorder, and depression. The pain she was experiencing was so extensive that her physician advised her to reduce the number of hours she was working, and when that did not help, advised her to take a leave of absence and apply for social security disability benefits. At the time of trial, Wanda was not working because of her medical issues. She had applied for social security disability benefits but had not yet learned whether she would qualify for those benefits.

Before the dissolution trial, the parties resolved numerous contested issues which are not part of the considerations in this appeal. A one-day trial was held over the remaining issues on April 27, 2022.

The district court entered its findings of facts, conclusions of law, and decree on June 30. The decree incorporated the partial stipulation filed prior to trial. As for the remaining contested issues, the property was divided equitably between the two parties with Wanda receiving $7409.98 more in value than Ron.[3] The

---

[3] The net property settlement award to Wanda equaled $52,773.50 and Ron's net award was $45,363.52.

district court also ordered Wanda to pay child support of $50 per month, awarded Wanda rehabilitative spousal support of $700 per month for twenty-four months, and required Ron to pay $1000 toward Wanda's $5430 attorney-fee obligation.

On July 15, 2022, Wanda moved to reconsider the terms of the decree. She argued the district court's award of rehabilitative spousal support failed to achieve equity between the parties and that Ron should be required to pay all of her attorney fees instead of the $1000 due to his superior financial position. Ron resisted the motion. After reviewing both filings, the district court denied Wanda's motion.

Wanda appeals the ruling on spousal support and requests appellate attorney fees.

## II. Standard of Review.

Our review of equity cases, which encompasses dissolution-of-marriage proceedings, is de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). On appeal, "[w]e give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards." *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). A district court's award of spousal support should be disturbed "only when there has been a failure to do equity." *Gust*, 858 N.W.2d at 406 (citation omitted).

## III. Discussion.

### A. Spousal Support.

After considering Wanda's property award along with the factors bearing on a spousal-support award, the district court based its decision to award rehabilitative spousal support on Wanda's ability to rejoin the workforce and become self-supporting through a "limited period of education and retraining." Taking note of her compromised physical condition, the court stated

> the limitations that her health problems currently place on her employment are purely physical, in the form of her lack of ability to grasp, lift, and carry items, as is necessary for her most recent employment in a grocery store. There is no evidence in the record that with some education and/or training Wanda could not be suitable for employment that did not require these particular physical tasks . . . . .

Wanda challenges the district court's award and maintains that the length of the marriage, her poor physical and emotional health, low earning capacity, and overall lack of ability to become self-supporting justify an award of traditional spousal support of $1500 monthly for the remainder of her life. Although arguing the award that was ordered will cause him financial stress, Ron did not cross-appeal the spousal-support award and asks that the decision of the district court be affirmed.

"Alimony 'is a stipend to a spouse in lieu of the other spouse's legal obligation for support.'" *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007) (citation omitted). When possible, courts try to award alimony so that both parties can maintain the standard of living they enjoyed during the marriage. *In re Marriage of Grauer*, 478 N.W.2d 83, 85 (Iowa Ct. App. 1991); *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983). Iowa Code section 598.21A(1)

(2021) provides guidance on determining the necessity, type, and amount of spousal support, including a list of factors to consider:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

The issue in this appeal centers on if Wanda will be able to become self-supporting with the help of the rehabilitative spousal-support award or whether the factors and circumstances justify a need for traditional spousal support. "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *Sokol*, 985 N.W.2d at 185 (citation omitted). This type of spousal support "addresses training, education, work-readiness, and human capital development." *Id.* at 187. Traditional support, on the other hand, "is equitable in marriages of long duration to allow the recipient spouse to maintain the lifestyle to

which he or she became accustomed." *Id.* at 185. "Generally, only 'marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support.'" *Id.* (citation omitted). Here, the marriage crossed the durational threshold for traditional support, but there are other factors to consider including a "marked disparity of income" between spouses. *See Mann*, 943 N.W.2d at 21 (citing *Gust*, 858 N.W.2d at 411–12).

The factors in section 598.21A(1) and goals of spousal support conveyed in *Sokol* weigh heavily in favor of an award of traditional spousal support. *See* 985 N.W.2d at 185. The couple were married for twenty-five years. And although Wanda received a property award that exceeded the value of that received by Ron by more than $7400, the district court opined it would not result in a cash windfall or a significant gain in equity for her until Ron's pension and annuity fund kicked in at his retirement. Ron and Wanda's joint decision to have Wanda leave the workforce to care for the family hindered her ability to maximize her earning capacity during the marriage. At her current age of fifty-four, Wanda has little opportunity to obtain gainful employment even through education, training, or other means. Wanda presented evidence of her physical ailments and testified the pain she experiences keeps her from working. Ron argued the recent complaints, made just before trial, were not genuine; but the district court found "Wanda presents competent evidence that she does have legitimate diagnoses for at least some of these ailments and that they do impact on her ability to work." The district court also found no evidence Wanda had "the educational background, training, employment skills, or work experience to obtain anything more than entry-level

employment, likely at or near minimum wage." This led the district court to conclude that,

> [a]bsent any support at all, the feasibility of Wanda obtaining a standard of living comparable to that enjoyed during the marriage is nearly zero, as she simply does not have an earning capacity anywhere near that of Ron, nor does she have the potential to achieve such an earning capacity at any time in the near future.

But, in its analysis of what type of spousal support to award, the district court noted that although Wanda could not do physical tasks, she could find other employment, such as a "desk job," with some education or training. Thus, the district court ordered "rehabilitative alimony" for twenty-four months to support Wanda "through a limited period of education and retraining with the object of self-sufficiency." But the record is void of any showing about what training, over what time, and at what cost, would bring Wanda to the goal of self-sufficiency. *See id.* at 186 ("Without a showing that the recipient spouse seeks reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting, rehabilitative spousal support is inappropriate."). In sum, the record establishes that due to her education level, time out of the workforce, age, and physical ailments, Wanda will not be able to become self-supporting without help.[4]

Having determined that traditional spousal support is warranted, we turn to Wanda's need and Ron's ability to pay. Wanda maintained that her net monthly income at a part-time job would be around $600, and even Ron limited her monthly net earnings to $1119 on his affidavit of financial status. Ron reported his net

---

[4] Although Wanda did not file an affidavit of financial status, she did testify that her overall monthly expenses to live in a one-bedroom studio apartment would be approximately $2170. She believed that even if she worked a minimum wage job, she would have a shortfall of $1570 per month.

monthly income on his financial affidavit at $4359, assuming annual earnings of $62,690. Instead of Ron's numbers, we accept the district court's determination that Ron's average gross annual earnings equal $80,697.33, after averaging several years of earnings and excluding 2021 as an "outlier" year. *See In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 334 (Iowa Ct. App. 2005) (affording the district court discretion to compute fluctuating earnings). Likewise, even though Wanda was earning more than $20,000 in her last full year of work, her part-time earnings at present will be much lower given her medical conditions, and we note the district court did not impute any income to her when calculating her child-support obligation. Thus, Wanda's annual income is far less than that of Ron's and, while she may reach some level of self-support, she will not be able to live the comfortable lifestyle she enjoyed during the marriage.

Still, we agree with the district court that Ron's ability to pay is an appropriate consideration as the entitlement of spousal support should be awarded "without destroying the right of the party providing the income to enjoy at least a comparable standard of living as well." *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa Ct. App. 1995) (emphasis omitted) (citation omitted). In light of the above, we modify the spousal support award to require monthly payments of traditional spousal support in the amount of $1000 per month until Ron retires or dies or Wanda remarries, cohabits, or dies—whichever occurs first. Thereafter, both Ron and Wanda will receive benefits under Ron's pension, in addition to any other sources of retirement income they each may have. *See Sokol*, 985 N.W.2d at 185 (noting the duration of a traditional support award should correspond with

the need).  At that point, they will likely be in a place where they are more similarly situated.

### B. Appellate Attorney Fees.

Both Ron and Wanda request an award of their appellate attorney fees. Each filed an affidavit of fees expended—Wanda requested $4750 and Ron requested $5887.  "An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions." *In re Marriage of Scheppele,* 524 N.W.2d 678, 680 (Iowa Ct. App. 1994).  "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* Given the circumstances of this case and earnings disparity of the parties, we conclude Ron should pay $2000 towards Wanda's appellate attorney fees and deny Ron's request for appellate fees.

## IV. Conclusion.

We affirm the decree issued by the district court but modify the spousal support award in its amount and duration.  We award Wanda $2000 in appellate attorney fees.

**AFFIRMED AS MODIFIED.**