**IN THE COURT OF APPEALS OF IOWA**

No. 23-1966
Filed January 9, 2025

**TERRELL TASHAWN HARRIS,**
        Petitioner-Appellant,

**vs.**

**BRIDGETT FAY SMITH,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Paul Scott, Judge.

A father appeals the district court's final judgment establishing custody, visitation, and child support. **AFFIRMED AS MODIFIED.**

Elena Greenberg and Jason Dunn of Greenberg Law, PLLC, Des Moines, for appellant.

Ande Skinner of Ramsey Law, P.L.C., West Des Moines, for appellee.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

Terrell Harris, father of the two minor children, appeals the district court's final judgment establishing custody, visitation, and child support. He argues the district court erred in (1) finding joint physical was not in the best interests of the children and awarding primary physical care with the mother, Bridgett Smith, and (2) calculating child support and past child support. We affirm the district court's physical care and child support determinations but modify Terrell's back child support obligation.

## I. Background Facts and Procedure

The parties were in a romantic relationship from 2010 to 2020 but were never married. During that time, they had two children together: their daughter, A.L.H, born in 2013, and their son, A.T.H., born in 2015. The children were ten and eight years old, respectively, at the time of trial.

The parties split up in 2020, and the district court found there was credible evidence supporting a conclusion that "both Bridgett and Terrell have cared for the children in the past and, at one time, both may have been appropriate custodians for the child." But the parties argue that the coparenting relationship has declined since their 2020 split.

After Terrell moved out of the shared home, he testified that Bridgett exercised complete control over the terms of his visitation. He claimed that it was hard to communicate with her and that he would often be "asking and pleading" for visitation opportunities with the children. Bridgett admitted that she had denied Terrell visits with the children at times, and text message history corroborates such.

But she also described the harassing and destructive behavior that Terrell would engage in that made her hesitant to hand the children over to him at times. We will not engage in an extensive play-by-play commentary on each instance of friction between the parties. Yet there are a few incidents worth highlighting to illustrate some breakdown in the coparenting relationship.

Bridget claimed that before Terrell moved out he "destroyed [her] belongings, spray painted her bedroom furniture, crushed food into the floor, threatened to destroy the house with a baseball bat, and essentially trashed the home." She testified that Terrell FaceTimed her while she was with the children to make the threat to destroy the house with a baseball bat.

Bridgett testified that, after Terrell moved out, he began to show up at her house at random times of the night and would ring the doorbell multiple times, "probably four to five times a week," which would wake up the children. She claims she blocked him from contacting her after these incidents. The parties later met to discuss custody and Bridgett claimed he threw his leftover spaghetti at her through her car window as they were leaving because he was angered at the idea of paying child support.

Bridgett admitted that Terrell's visitation with the children was often on her terms, but stated that his visitation requests were "on Terrell's time" and usually "last minute" requests that were difficult to accommodate because of the oldest child's extracurricular schedule. Terrell argued that this difficulty was due to Bridgett having blocked his number, and she was punishing him for introducing the children to his newborn child.

Bridgett proposed using a parenting app to share information and create calendars for the children's care. She then created the calendars and Terrell admitted that he had access to those calendars and that Bridgett maintained them. He stated that the calendars had been wrong on multiple occasions, and that he did not have contact information for the coaches. But Bridgett testified that he knew the coaches and could have easily contacted them if he desired.

Terrell petitioned to establish custody, visitation, and support in November 2022, and following mediation, the parties entered a mediation agreement which set forth a temporary plan in January 2023. In April, the parties reached a temporary stipulated child support agreement by which Terrell was to pay Bridgett monthly child support. The temporary stipulation also provided that Terrell was to set up and attend therapy with the oldest child and notify Bridgett of the appointment schedule. Terrell never completed those tasks. Bridgett eventually set up and scheduled the therapy, and Terrell missed the first session.

Trial was held in July. During trial, Bridgett filed an amended answer and counterclaim with leave of the court to request back child support. The district court entered its decree establishing custody, visitation, support, and related matters on October 5. Terrell and Bridgett were awarded joint legal custody, Bridgett was awarded primary physical care subject to Terrell's right to reasonable and liberal visitation, and Bridgett was awarded child support and back child support. Terrell now appeals.

## II. Standard of Review

We review child custody and support orders de novo. Iowa R. App. P. 6.907; *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). We give weight to the district court's factual findings but are not bound by them. *Id.* at 20.

## III. Error Preservation

Terrell argues that the district court exhibited bias in favor of Bridgett. He primarily objects to the district court finding Bridgett's testimony to be credible. But Terrell never moved for the judge's recusal and did not raise bias at any point during trial or in his motion to reconsider, enlarge, and amend. Error is therefore not preserved for our review, and we do not address any of his contentions of bias. *See In re Marriage of Haecker & Blomme*, No. 13-1876, 2015 WL 4642088, at *1 (Iowa Ct. App. Aug. 5, 2015) (finding bias issue not preserved because the appellant "did not file a motion to recuse the judge, object to the comments he found offensive, or raise the bias issue at any stage of the trial" (citing *In re Marriage of Ricklefs*, 726 N.W.2d 359, 362 (Iowa 2007))).

## IV. Discussion

Terrell argues the district court erred in (1) finding joint physical was not in the best interests of the children and awarding primary physical care with Bridgett, and (2) calculating child support and past child support.

### A. Physical Care

If joint legal custody is awarded to both parents, the court may award joint physical care to the parties upon the request of either parent. Iowa Code §§ 598.41(5)(a); 600B.40 (applying section 598.41 to custody and visitation determinations under chapter 600B) (2022). "If the court denies the request for

joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child." *Id.* § 598.41(5)(a).

In determining physical care, we consider the factors in Iowa Code section 598.41(3). *Id.* § 600B.40(2). We also consider approximation, communication between the parties, degree of conflict, and degree of agreement in approach to matters. *In re Marriage of Hansen,* 733 N.W.2d 683, 697–99 (Iowa 2007). Yet "the child's best interest is the overriding consideration." *In re Marriage of Fennelly,* 737 N.W.2d 97, 101 (Iowa 2007). "The parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver." *In re Marriage of Walton,* 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

Terrell argues the district court did not provide specific findings of fact showing that awarding Bridgett primary physical care would be in the children's best interest. But the district court stated that

> credible evidence was presented that both Bridgett and Terrell have cared for the children in the past and, at one time, both may have been appropriate custodians for the child. . . . The Court does not find this issue to be close.
> Over the last few years, since the split in 2020, the children have been in Bridgett's primary physical custody. The parties do not communicate well and lack mutual respect. The parties do not agree on matters involving routine care. Terrell has responded inappropriately to [Bridgett] on more than one occasion. Once throwing spaghetti on her in public and in front of the children. A second example is that at the time the couple split up, Terrel spray painted [Bridgett's] furniture and otherwise destroyed some of her property. The children are in therapy and Terrell is not a will[ing] participant.

The parties' testimony supports the district court's factual findings, which we see no grounds to disturb. While both parents have contributed to the breakdown in the coparenting relationship, these facts confirm Terrell bears the most responsibility for failing to meet the *Hanson* or Iowa Code factors; particularly degree of conflict, inability to communicate, and degree of agreement on parenting matters. *See* 733 N.W.2d at 697–99; Iowa Code § 598.41(3).

We affirm the district court's physical care determination.

## B. Child Support

Terrell alleges the court improperly imputed his income for purposes of child support calculations. *See generally* Iowa Code § 600B.25(1) (applying section 598B.21 to child-support determinations under chapter 600B). Specifically, he argues that it is unclear how the court determined that his income was $96,000 per year.

We "determine the parents' current income from the most reliable evidence presented." *In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010). This often requires the court to carefully consider all the circumstances relating to the parent's income. *In re Marriage of Powell,* 474 N.W.2d 531, 534 (Iowa 1991). Overtime income should be considered when establishing net income unless it is "an anomaly or is uncertain or speculative." *In re Marriage of Kupferschmidt,* 705 N.W.2d 327, 333 (Iowa Ct. App. 2005).

Terrell provided a paystub from March 19, 2023, to March 25, 2023, that showed his income for that week to be $1755.89. That paystub included ten hours of overtime and two hours of paid training compensation. It also shows Terrell having earned $22,189.14 through that date, which would amount to just over

$96,000 if he earned at the same rate over the rest of 2023. A later 2023 paystub showed him on pace to earn around $88,000. Although Terrell is only guaranteed two hours of overtime per week, he regularly works significant overtime.

Terrell submitted Forms W2 for the years 2018 to 2020. But he failed to provide the same Form W2s for any year after 2020. And if he wanted to show the district court that his real income was lower than his 2023 paystubs suggest, it would have been prudent for him to provide recent tax documentation. The 2022 paystub Terrell provided showed he had made $57,557.31—on pace for over $81,000. If his 2022 income fell off precipitously after the date of that paystub as he suggests, it was incumbent on him to provide documentation showing that. With the documentation Terrell has provided, we see that his income has gradually increased over the years since 2020. Lacking proof otherwise, the district court had a limited income snapshot to work with. Terrell should not benefit from the very limited and selective documentation he chose to provide. We accordingly affirm the district court's child support calculation.

## C. Past Child Support

"Unlike a current child support obligation, the guidelines are not used to establish the amount of past child support." *Markey,* 705 N.W.2d at 24. Instead, the "court may order the father to pay amounts the court deems appropriate for the past support and maintenance of the child." Iowa Code § 600B.25(1). "This standard permits the court to consider all the surrounding facts and circumstances to determine the amount in light of the purpose of child support and the duty of a parent to pay child support." *Markey,* 705 N.W.2d at 24. "[T]he analysis should

begin with the amount of support that would have been paid under the guidelines if no delay had occurred." *Id.*

Terrell argues the district court erred in its back child support determination and failed to consider $8770 in payments he made to Bridgett between 2020 and the time of the temporary child support order. The district court set past child support at $21,600. Thirty-nine full months passed between the parties' separation and the time of trial. We find Terrell's temporary child support obligation to be a reasonable estimate of the monthly child support during that period. Excluding the three months that Terrell was paying child support under the temporary order, thirty-six months multiplied by Terrell's temporary obligation of $600 comes out to a total amount of $21,600—the same figure at which the district court arrived. But after subtracting the $8770 in payments Terrell made to Bridgett during that period, the total past support obligation would amount to $12,830. We see no additional expenses in support of the children that would warrant increasing this obligation. We thus modify Terrell's total past child support obligation to $12,830.

## V. Conclusion

Accordingly, we affirm the district court's physical care determination and Terrell's child support obligation but modify Terrell's back child support obligation.

**AFFIRMED AS MODIFIED.**