# IN THE COURT OF APPEALS OF IOWA

No. 14-1684
Filed October 14, 2015

IN RE THE MARRIAGE OF DOUGLAS LEE SMITH
AND LORI ANN SMITH

Upon the Petition of
**DOUGLAS LEE SMITH,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**LORI ANN SMITH, n/k/a**
**LORI ANN KINTZLE,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Marsha A. Bergan,

Judge.


        Lori appeals and Doug cross-appeals the district court's rulings on their

third modification and on Doug's request for declaratory judgment.  **AFFIRMED**

**AS MODIFIED AND REMANDED.**


        Mark D. Fisher of Nidey Erdahl Tindal & Fisher, Cedar Rapids, for

appellant/cross-appellee.

        Christine L. Crilley of Crilley Law Offices, P.L.L.C., Hiawatha, for

appellee/cross-appellant.


        Heard by Doyle, P.J., Bower, J., and Eisenhauer, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BOWER, Judge.**

This appeal involves the third modification of Lori and Doug Smith's January 2002 stipulated decree of dissolution and Doug's request for declaratory judgment. Lori and Doug are the parents of three children, and in 2008 the court modified visitation. The court's May 2011 ruling denied Lori's application for rule to show cause, calculated a step down in Doug's child support, struck the original decree's ambiguous bonus language, and calculated Doug's monthly child support based on his total income, regular and bonus. The court's April 4, 2014 third modification ruling, currently on appeal, found Doug's request to modify physical care moot and ordered Lori to pay both prospective and retroactive child support to Doug. The court determined the 2002 dissolution court intended for Doug to pay 32.7% on a maximum of $20,000 in "annual" bonus income ($4062.65 per year). Lori appeals. Doug filed a cross-appeal. We strike the portion of the district court's 2014 decree ordering Lori to pay $7177.15 in retroactive child support to Doug, affirm as modified, and remand for the district court to determine in the first instance when interest accrues on Doug's bonus-support obligation. We do not retain jurisdiction.

**I. Background Facts and Proceedings**

Lori and Doug married in 1987, and in 2001 Doug filed a petition for dissolution. Lori sought temporary support. The district court's November 2001 order stated Doug, in addition to his gross income of $115,000 per year, received a substantial bonus "earlier in 2001 that is not likely to be repeated in subsequent years." The court imputed $17,000 in income to Lori, applied "the appropriate

percentage to [Doug's] entire net income," and ordered Doug to pay temporary child support to Lori. The next month Doug sought to modify this support obligation, stating his employer, McLeod Publishing, "has announced [a] substantial lay-off and pay reduction" and his income would be reduced by $20,000. Doug attached his new "employment and confidentiality agreement":

> This agreement is confirmation of our job offer from [McLeod Publishing] as Regional Sales Manager [as of] December 30, 2001. Your wage for this exempt position is $3653.85 bi-weekly [$95,000/year]. Your bonus for calendar year 2002 is $20,000 based upon performance, to be paid at the discretion of Art Christoffersen. This bonus is in lieu of the standard RSM bonus plan for 2002.

In January 2002 Doug withdrew his modification request, noting the parties were negotiating an agreement.

*2002 Decree of Dissolution.* On January 31, 2002, the parties filed a joint stipulation. That same day, the court approved the stipulation and entered a decree. The stipulated decree provided for joint legal custody, physical care to Lori, and visitation to Doug. As relevant here, Doug was allowed to claim the oldest two children as dependency exemptions if he was current on his child support obligation on "December 31 of the applicable tax year." The court ordered Doug to pay "child support at the base rate of $1670 per month for the support of the minor children. Additionally, [he] shall pay additional child support at the rate of 32.7% of any annual bonuses which he may receive from his employment." The bonus provision has been the subject of ongoing litigation.

In January 2003 Doug received a $20,000 bonus for his 2002 employment and paid Lori $4062.65, or 32.7%, a few days later. Doug did not pay Lori child

support on any of the other bonuses he received thereafter. In January 2005 Lori asked Doug about the absence of support payments on bonuses. Doug replied he was "no longer making bonuses" because he was not putting in the time at work needed to earn bonuses but rather was choosing to spend that time with the children. Lori believed Doug's explanation because she knew his employer was not doing well financially and also knew he was "completely engaged in the children's activities." The district court specifically found Lori's description of this conversation credible. Believing Doug's explanation, Lori thereafter twice filed satisfactions of judgment stating Doug was current on his child support.

*2008 Proceedings*. In January 2008 the court modified the visitation provisions in the decree. In late April 2008 Doug sent Lori an email about the upcoming step down in his support obligation due to their oldest child's high school graduation. After Lori toured Doug's new home in May 2008, she believed Doug had, in fact, been receiving bonuses and not disclosing them. In early May 2008 Lori responded, stating she had been meaning to ask Doug about his income for the past three years but had not "for fear of getting into a big pissing match." Lori asked Doug to provide his W-2s for the past four years. The district court found Lori's request was reasonable. On July 13, 2008, the parties exchanged a series of emails regarding child support. Doug's email stated: "So to answer your question, yes I have received a variety of bonuses but don't feel you [are] entitled to any of them."

At some point Lori dismissed her attorney and acted pro se. In early December 2008, Doug's letter to Lori again emphasized her signed satisfactions

of judgment and asked her to "remember you have been getting support for three [and] since May [2008], it should be for two."

*2009 Proceedings*. In January 2009 Lori filed a petition asking the court to modify Doug's base rate of child support and the percentage of Doug's additional (bonus) child support obligation. In February 2009 Doug answered and filed a counterclaim. Doug denied "Lori's interpretation" of the stipulated decree's bonus language and asked the court to dismiss Lori's petition "except to recalculate the child support for two children, apply an extraordinary visitation credit, and eliminate the bonus paragraph." Doug's counterclaim repeated those requests and also asked for shared care.

Also in January 2009, Lori filed an application for rule to show cause seeking to hold Doug in contempt for his "willful and deliberate failure" to pay child support on the bonuses. In his February 2009 resistance, Doug noted Lori's satisfaction of judgment and the subsequent court order stating Doug had fully paid his support through February 28, 2007. In response, Lori dismissed her application without prejudice and filed to set aside the satisfaction. After a hearing in which Doug resisted Lori's set-aside request, in November 2009 the court set aside its June 2008 order approving Lori's satisfaction of judgment. In December 2009 Lori refiled her application for rule to show cause, and the court set hearing for February 2010.

*2010 Proceedings*. In Doug's resistance to Lori's refiled application, he acknowledged the court's November 2009 order "resolved the issue regarding the satisfaction of judgment." In March 2010 Doug filed an offer to confess

judgment for $115,122.63 on the bonus dispute. Lori did not accept, stating the offer only covered bonuses through 2008 and did not include child support for Doug's 2009-2010 bonuses. On April 7, 2010, Doug filed an application for an expedited hearing on recalculation of child support to step down to two children "effective May 2008; and commencing immediately."

## A. Resolution of Contempt and Step-Down; Second Modification

On May 25, 2010, the court held a combined hearing on Lori's application for rule to show cause and Doug's application for expedited hearing re child support step down. Before the district court could issue a ruling, on July 9, 2010, Lori filed, pro se, another contempt action. Doug's attorney withdrew in August 2010, and the parties represented themselves at the October hearing. The next day, October 7, 2010, the court dismissed Lori's claim. On October 10, 2010, the hearing on Lori's petition for modification and Doug's counterclaim commenced with both parties again representing themselves and having reached a partial agreement on their requests. The court's May 25, 2011 ruling identified the issues as (1) Lori's allegation of Doug's contempt, (2) Doug's April 7, 2010 request for recalculation of child support, and (3) both parties' respective requests for modification.[1]

*Lori's Application for Rule to Show Cause*. The court stated "the critical question" is whether the dissolution decree was "sufficiently clear and

---

[1] After noting "neither party filed an action for declaratory ruling," the court declined Doug's attorney's oral request, made at the start of the May 2010 hearing, for the court to "declare" what amount, if any, "is due from Doug to Lori for child support on any employment bonuses." The court stated its expectation for "additional evidence and argument at a contested and well-tried action for declaratory ruling on exactly what amounts Doug owes Lori."

unambiguous" so that "this court today can find beyond a reasonable doubt that Doug's failure to pay child support on what came to be sporadic or periodic bonuses was a willful disregard" of the dissolution decree. Answering "no," the court found the dissolution court's "order was unfortunately ambiguous":

> It was not sufficiently clear to Doug that the court meant *any and all* bonuses when the court used the word *annual* to describe Doug's bonuses, particularly in the context [of] Doug's previous bonuses [having] been annual bonuses, not sporadic [or] periodic bonuses.
>
> While this court is prepared to find—and will later in this order—that the court in issuing the decree of dissolution would have intended that Doug pay child support on all the wage-bonuses, such a finding does not automatically mean that Doug's failure to do so constituted contempt of court.

The court found Doug complied with the decree by paying Lori $4062.65 in early January 2003 for his 2002 bonus of $20,000, his last "annual" bonus. The court also found Doug "always paid his monthly child support timely; and on the date of the trial he was current on his $1670 monthly obligation" for three children although "he was legally obligated to support only two children by that point." The court rejected Doug's defenses of laches and equitable estoppel, finding "insufficient evidence that Lori waived any right she might have to child support arising from Doug's bonuses. Evidence does not support the assertion that Lori unreasonably delayed, to Doug's detriment, in bringing the issue of the child support on Doug's bonuses to court."[2] The court adjudged Doug "not to be in contempt of court for failing to pay child support on his bonus income."

---

[2] The court found: "Generally the annual bonuses were paid early in the year. A $42,000 annual bonus was paid while the parties were married on February 2, 2001. No annual bonus was paid in 2002. The $20,000 annual bonus was paid on January 3, 2003."

*Doug's Application for Child Support Recalculation*. The oldest child graduated in May 2008. The court stated: "To be clear, the court finds that, in implementing the step-down under the previous decree, Doug's bonuses should be considered." Lori's 2008 gross income was $40,071. Noting an exact calculation of Doug's 2008 gross annual income was not possible, the court adopted Doug's proposal of $191,384 and ordered Doug to pay $1928.97 per month for "two children effective with the payment due on June 20, 2008."[3] The court gave Doug four months "to pay the difference of $258.97 (the retroactive amount due) for each month from June 20, 2008, to June 20, 2011," or $9322.92. The court stated Doug would not be delinquent "unless there is [a] subsequent failure to make the payment due in full by September 1, 2011."

*Lori's Petition for Modification and Doug's Counterclaim*. The court approved and adopted the parties' agreement to modify the decree so their youngest child had "an additional day and overnight" with Doug.[4] The court gave Doug credit for extraordinary visitation. Effective June 20, 2011, "the modified child support due from Doug to Lori . . . is $1625.92 per month for two children, with a step-down of $1139.31 for one child."[5] Finally, the court ordered:

---

[3] For purposes of this automatic recalculation, the court declined to change the tax-dependency provision and declined to grant Doug an extraordinary visitation credit: "The court is simply adjudicating a step-down, not a modification, upon graduation."

[4] Doug withdrew his request for shared care. The court noted the middle son had turned eighteen already, "so this modified visitation order will not apply to him."

[5] For its calculation the court used higher gross incomes than submitted by either party. The court found Lori's 2009 wage income to be $24,000 annually and found Doug's total income, wage and bonus, to be $221,795.94 annually. Lori was entitled to two exemptions, the parties' youngest son and her younger child with her new husband, Thomas Janusz. Doug was entitled to an exemption for the parties' middle son.

"Reference to annual bonuses or bonuses of any kind, in paragraph 11 of the Stipulation/Decree is stricken," effective on June 20, 2011.

*Post-Trial Motions on May 25, 2011 Ruling.* In August 2011 the court conducted a hearing on the parties' post-trial motions. Both parties expressed concerns about the meaning of the court's denial of Doug's oral request for a declaratory judgment ruling. In response, the court's September 2011 ruling stated: "Such a right is reserved to the parties, because the court did not issue a declaratory ruling" in the May 25, 2011 order. The court's September 2011 ruling also clarified its May 2011 elimination of the bonus provision: "The court finds that child support should be based upon Doug's current income. Doug's current income includes his bonus income. The decree need not contain a separate provision covering bonuses." Neither party appealed.

**B. Third Modification and Request for Declaration on Bonus Issue; Request for Suspension of Child Support**

*Modification and Declaration re Bonus.* Approximately four months later, on January 24, 2012, Doug filed to modify physical care and requested declaratory relief on the bonus issue. Doug stated the parties' youngest son and only remaining minor child, T.S., is a sophomore in high school. As of August 3, 2011, T.S. had resided with Doug full time, although Doug continued to pay Lori $1139.31 in monthly child support. Doug requested (1) physical care of T.S., (2) the termination of his support obligation, and (3) a determination of Lori's child support obligation. In response, Lori claimed T.S. chose to live with Doug

because he was more lenient. Lori did not agree to T.S. living with Doug and asked the court to uphold the original decree's physical-care provision.

In his request for declaratory relief, Doug asked the court to declare whether he owed "Lori any monies in prior years as to the bonus language" and also asked the court to calculate the amount owed, if any. Lori replied, pointing out the "line of work that Doug has been in for twenty plus years" always "paid bonuses throughout the year."

*Suspension of Child Support—Doug's Motion and Ruling.* The next month, February 2012, Doug asked the district court to suspend his child support obligation pending the court's resolution of the modification. Doug stated T.S. would be seventeen in July 2012 and attached a letter from T.S.'s counselor stating T.S.'s "decision to live with his father appears to be a rational, not emotional one." The counselor supported T.S.'s decision. Lori resisted, claiming she was still paying school expenses for T.S. After hearing and based "upon the equities," the court denied Doug's application to suspend his child support,[6] and Doug did not appeal.

*Trial on Modification and Bonus Owed.* Trial was held on May 22-23, 2013. Doug appeared pro se and Lori appeared with counsel. At the time of trial, T.S. was two months from being eighteen. T.S. denied the reason for moving to his dad's house was for "more rights and privileges" and explained his underlying reasons. On the record, the court found T.S. "to be a pleasant and

---

[6] The court also stated, "should Doug prevail in his application [for physical care], the court in that ruling may retroactively modify judgments for child support previously entered under Iowa Code section 598.21C(5)" (2011).

impressive young man" and also stated, "I will credit much of what he has to say."

Doug testified he paid Lori the applicable percentage on his last "annual" bonus and pointed out "there has never been a judgment of any amount that I have not promptly paid." Lori testified the parties, in 2002, intended for Doug to pay 32.7% on *any* bonus he received from his employment. At the end of the hearing, the court told the parties "a couple of things about the order I intend to enter," including the court's intention to grant physical care to Doug, and "as soon as I can get the order entered, [Doug's] obligation to pay child support for [T.S.] cease[s]." The court would "probably" enter an order requiring Lori to pay child support to Doug. The court reserved the right "to actually change my mind about what I have announced here, with regard to any of the issues."

*Ruling on Modification and on Bonus Issue.* Ten months later, on April 4, 2014, the court's written ruling adopted the court's oral statements "regarding [T.S.'s] physical care." The court then noted the physical-care issue became moot when T.S. turned eighteen on July 1, 2013. The court ordered Doug's child support obligation "terminated effective immediately." The court adopted Lori's post-trial guidelines and ordered her to pay child support of $312.05 per month, starting on April 20, 2014, and continuing as long as T.S. "is residing with Doug and is in high school." The court also ordered Lori to pay "retroactive child support payments" from "May 20, 2012, through March 20, 2014, for a total of twenty-three months," or $7177.15.

Addressing the bonus issue, the court found "Doug is correct" as to the dissolution court's intention: "The court finds that the original language means what it says—that Doug is to pay child support arising from his 'annual bonuses.' Annual bonuses are bonuses received once a year. If the court had meant 'any bonuses,' the court could have said so." However, the court also found Lori correct "as to the court's intention in that the court knew of the possibility of Doug receiving up to $20,000 in an annual bonus. The court intended that, upon receipt of this income, the court wanted Doug's children to benefit from the bonus." The court found the dissolution court's setting of the percentage at 32.7% "indicates the court's expectation that the range of bonus would likely not exceed the anticipated $20,000"[7] and in 2002 the dissolution court intended Doug to "pay child support on an annual bonus that was equal to $20,000 or less." The district court explained:

> Today the court can say, *in looking back*, that Doug's periodic and varying bonuses were the sort of bonuses that Doug may well have been required to include in his net income for purposes of determining child support. From today's vantage point, the bonuses look to be a regular and significant part of Doug's earnings. In 2002, however, the Court did not have this knowledge when the court ordered Doug to pay 32.7% on any annual bonuses. In 2002 future bonuses were anomalous, uncertain, and speculative at McLeod, and the only bonus that was anticipated was an "annual bonus" that Doug hoped would be $20,000. The 32.7% provision for annual bonuses was intended to cover a bonus that would be within the $20,000 range, paid in a lump sum on an annual basis. The Court did not intend that the 32.7% provision would cover the lucrative salary package that Doug received between 2003 and 2010. The court did, however, intend that—if

---

[7] The court further explained: "Had the court expected in 2002 that Doug's bonuses would have exceeded the $20,000 range, the court would have accounted for that by including a provision for a reduced percentage on higher bonuses."

Doug received $20,000.00 in a bonus during any one year—he should pay 32.7% as child support on that amount.

The court "adopted" $4062.65, the amount Doug had paid Lori in January 2003 on his $20,000 bonus, and ordered Doug to make eight more payments of $4062.65 ($32,501.20), for the years between 2004 and 2011.

*Post-Trial Motions on April 4, 2014 Ruling.* Doug contended he should not have to make payments on bonuses for eight years, claiming the court's May 25, 2011 ruling required him to pay child support on all his income, regular and bonus, for 2008, 2009, 2010, and 2011. Doug asked to pay only for four years, 2004-2007 for $16,250.60 total. On September 21, 2014, the court partially agreed with Doug, finding a "problem with the court's April 4, 2014 order." The court had "neglected to consider" that "from June 20, 2008, forward, Doug *was* paying child support on bonus income, because the court used all his income, regular and bonus income, to calculate Doug's monthly child support obligation from June 20, 2008, forward." The court accordingly modified its April 2014 ruling to require Doug to pay child support on five years of bonus income, 2004 through 2008.[8]

_____

[8] The court explained it included 2008 because the first $4062.65 bonus support payment was made by Doug in January 2003 for his 2002 employment bonus. Thus, "the requirement that a payment is due for 2008 arises because the court considers the 2008 payment to be a January 2008 payment; and the modified child support figure that was based on *all* income did not go into effect until June 20, 2008."

In this appeal, Lori claims the court's post-trial ruling changing the applicable years from eight to five is a retroactive elimination of Doug's obligation for bonuses paid in 2009, 2010, and 2011. After our de novo review of the record, we find no merit to this claim. We agree with and adopt the district court's ruling explaining the court had already *required* Doug to pay child support on his total income, regular and bonus, for 2009, 2010, and 2011.

Doug's post-trial motion also claimed, under the court's May 23, 2013 *oral ruling*, his monthly support for T.S. terminated on May 23, 2013, and not on April 4, 2014 (written ruling). The district court addressed and rejected this claim, noting it had orally stated, "an order should be entered that places [T.S.]'s physical care with his father." But the court had told the parties:

> That means that effective as soon as I can get the order entered, Mr. Smith's obligation to pay child support for [T.S.] ceases. I'm going to look at the documents [Doug] filed. As long as [Doug has] made a request in [his] paperwork for child support, I will be requiring [Lori] to pay child support to [Doug] for [T.S.].

While the court regretted "the time that it took the court to enter its written ruling after the trial," it concluded "the court did not enter orders on May 23, 2013. Rather, at the conclusion of the evidence, the court said to the parties, 'I'm going to tell you a couple things about the order that I intend to enter.'" The court ruled "Doug's child support obligation . . . was not modified until the written order was filed [on April 4, 2014]."

Doug's final post-trial motion claimed he should receive a credit for the support he paid while T.S. lived with him or, alternatively, a credit for the support he paid from February 2012 (Doug's modification filing) to May 2013 (trial). The district court recognized the suspension court's ruling incorrectly implied Doug would have a right to a later reduction in child support if the modification court eventually granted his request for physical care. However, the district court determined it "cannot so rule; because Iowa law does not authorize a retroactive *reduction* in child support. Iowa law is clear that, once a judgment for child support accrues, it cannot be retroactively extinguished."

The court denied Lori's post-trial motion claiming the court should strike the provision requiring Lori to pay $7177.15 in retroactive child support. Second, Lori claimed she was entitled to $15,572 "for missed income tax dependency deductions taken by Doug despite his being in arrears on his child-support obligation." The court rejected this claim, ruling:

> The court realizes Lori spent considerable time to recalculate her tax obligations under her theory that Doug should be considered to have been delinquent in paying support. The court never found that Doug was delinquent in paying child support. The parties had a good-faith difference of opinion as to what the [dissolution] court's original decree meant. This was adjudicated in the declaratory judgment action. [9]

Lori timely appealed; Doug cross-appealed.

## II. Standard of Review

Because the declaratory judgment action was tried in equity, we review de novo. *Davidson v. Van Lengen*, 266 N.W.2d 436, 438 (Iowa 1978). Likewise, the modification action was tried in equity, and our review is de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). We give weight to the district court's findings due to its ability to observe and listen to the parties and witnesses. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986).

---

[9] Lori's appellate brief point II challenges the district court's ruling denying her request for $15,572 "for the tax benefits Lori missed out on as a result of Doug's failure to abide by the decree." Upon our de novo review of the record, we agree with and adopt the district court's resolution of this issue. Also, the textual discussion above shows there is no merit to Lori's reply brief's claim, "nor does it appear the court ever entered a ruling with regard to Lori's request that she be compensated for these wrongfully taken exemptions."

### III. Lori's Appeal

#### A. Bonus Provision

Lori claims the court erred in its calculation of Doug's child support owed to Lori based on the decree's bonus language—"any annual bonuses." Lori's trial exhibit B applied 32.7% to Doug's 2004-2008 total *net* bonuses of $353,527 to illustrate her claim for $115,604 in child support. She contends the court's interpretation does not reflect the dissolution court's intent.

Lori claims the court misinterpreted the term "annual" because "the language at issue was intended to apply to any bonus income in excess of the base child support amount." Lori claims the court's demarcation "between a base child support amount and an additional child support amount" shows "the intent of the court was [to apply] the child support guideline percentage amount of 32.7% . . . to all of Doug's income." Lori contends the word "annual" means the "additional child support was to be calculated and paid on an annual basis, not limited to one specific type of bonus." She also points out Doug's 2002 employment agreement "speaks only to the year 2002" while specifically acknowledging "another bonus plan (RSM) that was being superseded" in 2002. Lori claims her interpretation is the only interpretation that follows the temporary order. Further, the court's 2014 ruling is inconsistent with the unappealed May 2011 ruling finding "the court in issuing the decree of dissolution would have intended that Doug pay child support on all the wage-bonuses." Finally, Lori claims the district court's interpretation results in a "positive wrong." *See McCullough v. Connelly*, 114 NW 301, 303 (Iowa 1907) (stating the court will not

utilize a construction of a dissolution decree resulting "in a positive wrong" whenever "such result" is avoidable).

Doug responds the district court's April 2014 order fairly interpreted the decree because "annual" means a bonus paid to him once a year. Doug claims, although the court did not specifically strike the bonus language until the April 2014 decree, the court's May 2011 ruling "effectively eliminated" the bonus language from June 2008 forward by recalculating Doug's child support from June 2008 forward using *all* of Doug's income, regular and bonus. Thus, the court's post-trial correction order should be affirmed.

In resolving this issue, we first note the decree was a stipulated agreement. "A stipulation and settlement in a dissolution proceeding is a contract between the parties; however, it becomes final only when accepted and approved by the court." *In re Marriage of Handeland*, 564 N.W.2d 445, 446 (Iowa Ct. App. 1997). As such, once approved, the agreement is "interpreted and enforced as a final judgment of the court, not as a separate contract between the parties." *Id.* We look to the intent of the district court as the relevant intent, not the intent of the parties. *In re Marriage of Morris*, 810 N.W.2d 880, 886 n.2 (Iowa 2012) (stating the intent of the parties and counsel is irrelevant without a "showing their intent was shared with the judge entering the decree that adopted their stipulation"). Based on the record and on counsel's statements at oral arguments, we find the parties did not share their intent with "the judge entering the decree." Like the district court, we look to the intent of the dissolution court.

Because Doug's total income varied based on his bonuses, we recognize the dissolution court's "translation of the income of . . . an employed person who has varying wages to a monthly 'net income' is difficult." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 334 (Iowa Ct. App. 2005). "We evaluate the situation to see if the amount paid was consistent from year to year." *Id.* ("If the bonus was consistent, the bonus is included in the gross income figure."); *see In re Marriage of McCurnin*, 681 N.W.2d 322, 328-29 (Iowa 2004) ("All income that is not anomalous, uncertain, or speculative should be included for the purpose of determining a child support obligation."); *In re Marriage of Nelson*, 570 N.W.2d 103, 105 (Iowa 1997) (declining to include a one-time bonus in the calculation for child support). In resolving the bonus issue, we recognize (1) the parties chose to use the ambiguous language and (2) the parties did not share their intent with the dissolution court. "We also recognize the district court needs to be given some discretion in making computations." *Kupferschmidt*, 705 N.W.2d at 334. After considering Lori's arguments as to why the district court's computation of Doug's bonus income was not fair and equitable, after our de novo review of the record, and while being mindful of the discretion we accord the district court, we find no reason to modify the district court's determination of the dissolution court's intent as to the computation of Doug's child support obligation on his periodic, sporadic, and inconsistent bonuses. We affirm on this issue.

Doug claims interest did not accrue on his payments on his bonus income until the bonus issue was resolved in the court's May 25, 2011 and April 4, 2014 judgments. Doug cites Iowa Code section 252C.6 (2013) ("Interest accrues on

support debts at the rate provided in section 535.3 for court judgments.") and Iowa Code section 535.3(2) ("Interest on periodic payments for child . . . support shall not accrue until thirty days after the payment becomes due and owing and shall accrue at a rate of ten percent per annum thereafter."). The district court did not address this issue in either decree and Doug did not raise the issue in his post-trial motion. Accordingly, we remand to the district court for it to make an initial determination of Doug's accrued interest obligation. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We do not retain jurisdiction.

### B. Lori's Retroactive Child Support

Lori claims the court should not have ordered her, the parent with legal physical care, to pay retroactive child support to Doug, the parent with de facto care. Lori contends the court's award of retroactive support from the custodial parent to a parent with de facto physical care "results in an impermissible retroactive reduction" in Doug's child support under *In re Marriage of Barker*, 600 N.W.2d 321, 323 (Iowa 1999) ("[A]lthough a support order may be retroactively increased, it may not be retroactively decreased.").

The district court ordered Lori to pay retroactive child support to Doug for T.S. during the same time period Doug was paying child support for T.S. to Lori. We find the resolution of the same issue in *In re Marriage of Tilkes* persuasive and indistinguishable. No. 03-0864, 2004 WL 433918 (Iowa Ct. App. March 10, 2004). Laureen, the mother in *Tilkes*, claimed the father, "Michael, was the noncustodial parent, even though [the child] resided with him, [and] he may not collect child support from the custodial parent and therefore her obligation should

not begin until" the date of the modified decree. *Id.* at *2. We agreed, ruling if "we would now affirm the court's order requiring Laureen to pay Michael support for the period prior to the filing of the stipulation, the result would be having both parents paying child support to the other for the same child during the same time period." *See id.* We explained our reluctance to do so:

> Although [the child] was not living with Laureen, she was nevertheless the parent legally granted his physical care . . . . [The child] could have returned to her home at any given time during that period. However, until the issue of [the child's] physical care was finally resolved by the parties' stipulation and court approval in February 2003, Laureen still maintained that legal responsibility. We agree with Laureen, that her child support . . . should not begin until the district court approved the . . . stipulation in February 2003.

*See id.* Similarly, although T.S. was living with Doug, Lori was the parent legally granted his physical care and he could have returned to Lori's home at any given time before the district court entered its April 4, 2014 written ruling on physical care. Accordingly, we modify the decree to strike the portion of the district court's order requiring Lori to pay Doug $7177.15 in retroactive child support.

## IV. Doug's Cross-Appeal[10]

### A. Retroactive Termination of Doug's Child Support

Doug requests this court *reinterpret* Iowa Code section 598.21C(5) (providing for modification of child support orders) and abandon our existing law stating a court "may not reduce or eliminate periodic child support obligations that have accrued prior to the time that modification is ordered." *See Barker*, 600

---

[10] In his cross-appeal, Doug's first brief point makes no request for relief other than the relief requested in his following brief points.

N.W.2d at 324. Doug claims the *Barker* rule "is no longer fair and equitable with the current judicial delays" and shown by the circumstances herein.

It is not within the province of this court to overrule our supreme court's directive in *Barker*. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."). We instead apply "existing legal principles." *See* Iowa R. App. P. 6.1101(3). We decline Doug's invitation to reinterpret the existing case law.

### B. Failure to Suspend Child Support in 2012

Doug claims the April 17, 2012 ruling on his motion to suspend child support reserved the issue for trial. We disagree because the court clearly stated: "Based on the equities involved in this factual situation, I decline to suspend Doug's child support, and, therefore, overrule his application for suspension of child support." While the court went on to incorrectly imply the district court could then retroactively reduce Doug's support obligation, nevertheless, the April 17, 2012 ruling was a final judgment. Doug chose not to appeal. *See* Iowa R. App. P. 6.101(1)(b) (allowing "thirty days" to appeal "the final order or judgment").

### C. Oral Ruling

Doug claims the district court erred by not terminating Doug's child support to Lori as of the date of trial (May 23, 2013—oral ruling), or alternatively, using the oral-ruling date in the district court's written ruling. We are not persuaded.

The district court clearly reserved the right to change its oral ruling; thus, the oral ruling was not the court's final judgment. *See* Iowa R. Civ. P. 1.959 (requiring "all judgments and orders must be entered on the record of the court"). Under *Barker*, the district court's written ruling could not retroactively reduce Doug's child support back to the time of its oral statements. 600 N.W.2d at 323. We conclude Doug's child support obligation to Lori ended when the court entered judgment on April 4, 2014.

### D. Credit for Child Support

Doug claims the equities of this case "should cause the court to find a way to give" him relief. Doug suggests three alternatives as credits this court should grant to him to offset any amount he owes to Lori "per the bonus language": (1) the non-decreased child support" ($26,204.13); or (2) "the non-suspended child support" ($27,343.44); or (3) the $12,532.41 he paid after the court's oral statements and before the court's written ruling in 2014.

"What is equitable in a divorce is an endless source of debate." *In re Marriage of Fennelly*, 737 N.W.2d 97, 99 (Iowa 2007) The record shows the district court found credible Lori's description of a 2005 phone conversation in which Doug misled Lori by stating he was not earning bonuses because he was not putting in the time at work. *See id.* at 101 (stating appellate courts defer to the district court's credibility calls because that judge has the opportunity to observe the witnesses in person before reaching a conclusion on truthfulness). Doug's ex-girlfriend, an attorney, testified she and Doug had discussed Doug's child support based on the bonus language. She testified Doug "for sure knew

he owed something." She believed Doug did not want to pay Lori and also believed Doug was confused on how he should calculate his payments. Despite knowing he owed Lori "something," Doug allowed Lori to file satisfactions of judgment for his benefit and then attempted to use the satisfactions to stonewall her claim for child support payments based on the undisclosed bonuses. In these circumstances, assuming but not deciding we could grant Doug such a credit, the equities here do not warrant it.

## V. Appellate Attorney Fees

Lori requests $5500 for appellate attorney fees while Doug requests $7500. Appellate attorney fees are not a right, but instead rest in our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "Specifically, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Gaer*, 476 N.W.2d 324, 330 (Iowa 1991). Lori successfully overturned the order requiring her to pay Doug $7177.15 in retroactive child support. Doug was not successful on the counterclaims he advanced. Based on their relative annual incomes, Lori has less ability to pay the fees, and we award Lori $3000 in appellate attorney fees.

Costs on appeal are taxed to Doug.

**AFFIRMED AS MODIFIED AND REMANDED.**